**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE NEW YORK TIMES COMPANY
AND CHARLIE SAVAGE,

         Plaintiffs,

           v.

THE UNITED STATES DEPARTMENT
OF JUSTICE,

         Defendant.

ECF CASE

14 CIV. 03777 (JPO)

# THE UNITED STATES DEPARTMENT OF JUSTICE'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

PREET BHARARA
United States Attorney for the
Southern District of New York
*Attorney for the United States*
*Department of Justice*
86 Chambers Street – 3d Floor
New York, NY  10007
Telephone:  (212) 637-2678
Facsimile:  (212) 637-2686
E-mail:  Jeannette.Vargas@usdoj.gov
E-mail:  Tara.Lamorte2@usdoj.gov

Jeannette A. Vargas
Tara M. La Morte
Assistant United States Attorneys
-Of Counsel-

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ..........................................................................................................................7

POINT I      Disclosure of the Recommendation Memoranda and Declination Memoranda
Would Reveal Matters Occurring Before the Grand Jury in Contravention of
Federal Rule of Criminal Procedure 6(e) ................................................................8

      A.  The Subject Matter of the Grand Jury Investigations at Issue Has Never
Been Officially Disclosed or Confirmed ..........................................................3

      B.  Any Information in the Memoranda Concerning Independent or Parallel
Criminal Investigations Cannot Be Segregated and Released from the
Documents Without Revealing Protected Grand Jury Information ..................4

      C.  Any Public Interest in Disclosure Is Not a Valid Consideration in
Determining Whether Documents are Properly Withheld Under
Exemption 3 ....................................................................................................12

      D.  The Recommendation Memoranda Are Exempt as Documents that Outline
the Scope, Direction and Subject Matter of Contemplated Criminal
Investigations That Were Conducted Before a Federal Grand Jury ...............12

POINT II     The Government Amply Demonstrated that FOIA Exemptions 1 and 3
Protect Discrete Categories of National Security Information .............................14

      A.  Exemption 1 Protects The Withheld Categories of Classified Information ....15

      B.  Exemption 3 Also Protects The Withheld Categories of Information .............19

POINT III    The Government Properly Invoked
FOIA Exemption 5 to Withhold a Very Limited Amount of Information
in the Durham Memoranda ...................................................................................21

POINT IV    The Government Adequately Justified Invocation of FOIA Exemptions 6 and
7(C) to Protect Identifying Information of Third Parties Contained in Criminal
Investigatory Memoranda ....................................................................................23

CONCLUSION ......................................................................................................................25

# PRELIMINARY STATEMENT

Defendant the United States Department of Justice ("DOJ" or the "Government") respectfully submits this memorandum of law in further support of its motion for partial summary judgment and in opposition to Plaintiffs' cross-motion for partial summary judgment.

Much of Plaintiffs' argument rests upon a single flawed premise—that the identities of the decedents who were the subjects of the two underlying grand jury investigations are already a matter of public record. Plaintiffs' Memorandum of Law in Support of Their Cross-Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Partial Summary Judgment ("Pl. Br.") at 3, 8, 19, 22, 29. This is not the case, however. The Government has never officially disclosed or confirmed the subject matter or the targets of these investigations.

In asking this Court to order the disclosure of prosecutorial memoranda that detail the subject matter, direction, and scope of two grand jury investigations, that identify the targets of and witnesses in such investigations, and that even quote extensively from the transcripts of those grand jury proceedings, Plaintiffs therefore ignore a fundamental principle of our federal criminal justice system: "The proper functioning of our grand jury system depends upon the secrecy of the grand jury proceedings." *United States v. Proctor & Gamble*, 356 U.S. 677, 681 (1958). This general rule of grand jury secrecy, which is enshrined in Federal Rule of Criminal Procedure 6(e), applies with particular force where, as here, no indictment has issued as a result of the investigations and there has otherwise been no official disclosure of the subject matter of the investigations. *Id.* at 681 n.6; *see also In re American Historical Ass'n*, 62 F.Supp.2d 1100, 1103 (S.D.N.Y. 1999) (cornerstone of grand jury secrecy rule is the protection of reputations and well-being of individuals who are subjects of investigation but are never indicted). The Government has therefore properly withheld four of the five memoranda in their entirety under

Exemption 3, as their disclosure would reveal matters occurring before the grand jury in contravention of Rule 6(e).

Furthermore, the Government has also properly withheld discrete categories of information from all five memoranda, including foreign liaison services information, the locations of covert CIA installations, information concerning operational intelligence methods, and the personally identifying information of investigatory targets, covert and overt CIA personnel, foreign officials, and human sources. Courts have routinely held that this type of information is exempt from disclosure under FOIA. It is therefore unsurprising that Plaintiffs have been unable to adduce any legal authority holding that these categories of information are not exempt under FOIA. The Government's claimed exemptions should therefore be upheld.

## ARGUMENT

## POINT I

### DISCLOSURE OF
### THE RECOMMENDATION MEMORANDA AND DECLINATION MEMORANDA WOULD REVEAL MATTERS OCCURRING BEFORE THE GRAND JURY IN CONTRAVENTION OF FEDERAL RULE OF CRIMINAL PROCEDURE 6(e)

The Durham Declaration logically and plausibly establishes that disclosure of the Recommendation Memoranda and Declination Memoranda would necessarily reveal secret aspects of the inner workings of the grand jury, including the targets of the grand jury's investigations, the prosecutors' strategy and focus in conducting these grand jury investigations, the identity of witnesses called to testify before the grand jury, the substance of witness testimony before the grand jury, and the content of discussions with grand jurors. Declaration of John Durham, dated May 13, 2016 ("Durham Decl.") ¶¶ 10-12. Plaintiffs do not, and cannot, dispute that each of these categories of information is the type of core grand jury material protected by Rule 6(e), particularly in a case such as this one, where no indictments issued. *See,*

*e.g.*, *Application of United States for an Order Authorizing Disclosure of Certain Matters Occurring Before the Regular Friday 7/1/96 Grand Jury*, No. 98-MISC-016, 1998 WL 817759 (E.D.N.Y. Jan. 22, 1998) (documents that would reveal "information about the subject of the grand jury's investigation" fall within the scope of Rule 6(e)).  Accordingly, the four memoranda have been properly withheld under Exemption 3.

### A.  The Subject Matter of the Grand Jury Investigations at Issue Has Never Been Officially Disclosed or Confirmed

Much of Plaintiffs' opposition to the Government's withholding of the memoranda is based upon a faulty factual premise—that "the identities of the two detainees that became the focal points of Mr. Durham's investigation" are not secret, but are already a matter of public record.  Pl. Br. at 3.  In fact, the "identity of the decedents whose deaths were the subject of the grand jury proceedings in question, as well as the targets of the grand jury proceedings, have not been officially disclosed or confirmed."  Durham Decl. ¶ 12.

Although Plaintiffs speculate that the detainees whose deaths were investigated by the federal grand jury were Gul Rahman and Mandel al-Jamadi, there is absolutely no evidence to suggest that it was the deaths of these detainees in particular, among the many cases that Durham reviewed, that resulted in grand jury investigations.  Pl. Br. at 3.  The Government has not officially disclosed *any* information regarding the identity of the decedents, let alone identified the decedents as Rahman or al-Jamadi.  And the evidence cited by the Plaintiffs to support their assertion that this information is already in the public domain does not even mention the grand jury investigations at issue.  The only source of information cited by Plaintiffs regarding al-Jamadi's death is a news article that was written more than six years before John Durham even opened his investigation.  *Id.* at 3-4 & n.4.  Of course, this article does not disclose (much less officially) the subject matter of a grand jury investigation that would take place many years in

the future.  Plaintiffs also cite to discussion contained in the United States Senate Select

Committee on Intelligence's Study of the Central Intelligence Agency's Detention and

Interrogation Program (the "SSCI Report") regarding the circumstances of Rahman's death.  *Id.*

at 3 n.1.  Yet again, however, there is nothing in the SSCI Report that even alludes to the subject

matter of the grand jury investigations conducted by John Durham, let alone purports to connect

Rahman with those grand jury investigations.  Plaintiffs' unconfirmed and unsubstantiated

conjecture regarding the subject matter of the grand jury's investigations does not come close to

establishing that Rule 6(e) does not apply to the memoranda.  *Cf. In re Motions of Dow Jones &

Co., Inc.,* 142 F.3d 496, 500 (D.C. Cir. 1998) (protections of Rule 6(e) are not waived by public

disclosure occurring through "press reports relying on unnamed sources").

### B. Any Information in the Memoranda Concerning Independent or Parallel Criminal Investigations Cannot Be Segregated and Released from the Documents Without Revealing Protected Grand Jury Information

Plaintiffs suggest that information in the memoranda regarding the grand jury's

investigation can be segregated from any information in the documents that details investigative

steps that federal prosecutors took outside the presence of the grand jury.  Even assuming

*arguendo* that information generated in a parallel federal investigation is contained in the

memoranda, however, Plaintiffs ignore that such information could not be disclosed in the

present context without also revealing confidential matters that occurred before the grand jury,

including the subject matter, targets and witnesses in that grand jury investigation.  Durham

Decl. ¶ 13.  To the extent that Plaintiffs' argument relies upon the faulty premise that the subject

matter of the grand jury investigations is not itself secret, that contention is simply wrong as

discussed *supra*.  If Plaintiffs are suggesting instead that the disclosure of information regarding

any parallel investigation is mandated by the caselaw, even though the record establishes that

such revelations in this context will logically and necessarily divulge confidential matters occurring before the grand jury, this argument is also demonstrably incorrect.

In support of their argument, Plaintiffs extensively cite a D.C. Circuit case, *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 582 (D.C.Cir.1987), for the proposition that the Government must make a showing that disclosure of "every single part" of the memoranda would elucidate the secret workings of the grand jury. Pl. Br. at 16-18. That case does not carry the weight that Plaintiffs place upon it, however. In *Senate of Puerto Rico*, the D.C. Circuit simply noted that, in response to a FOIA request for "all evidence" pertaining to a particular investigation, it may have been possible for the Government to release both grand jury exhibits and non-grand jury evidentiary material in such a way that the recipient of the information would not have been able to discern which documents had been before the grand jury. Under those circumstances, the D.C. Circuit held, the agency was required to show that those evidentiary documents could not have been "revealed in such a manner that [their] revelation would not elucidate the inner workings of the grand jury." *Id.* at 582.

*Senate of Puerto Rico* presents issues that are markedly different from the case at bar. The memoranda sought by Plaintiffs in this case are not evidentiary documents that existed independent of the grand jury process and that were "coincidentally" before the grand jury, such as corporate documents produced pursuant to a grand jury subpoena. They are documents that were created by prosecutors in connection with grand jury investigations. The Recommendation Memoranda, for example, were produced as part of the process of commencing the grand jury investigation. And the Declination Memoranda directly concern and discuss the contours of grand jury investigations. Thus, while the production of evidentiary documents without any identifying marks linking them to a grand jury investigation may not, standing alone, reveal that

the documents were presented to the grand jury, the production of memoranda that actually describe in detail the course of federal grand jury investigations is an entirely different matter.

Moreover, unlike in *Senate of Puerto Rico*, the Government has made the necessary evidentiary showing of a nexus between disclosure of any part of the memoranda and the revelation of a protected aspect of the grand jury's investigation—by demonstrating that disclosure of substantive information from any of the memoranda would necessarily reveal the subject matter of the grand jury investigations discussed in those documents. Under Plaintiffs' approach, the Government would redact from the memoranda any explicit references to grand jury testimony and the like, but would release those portions of the memoranda discussing evidence that was not presented to the grand jury, such as summaries of witness interviews that were conducted by federal investigators outside the presence of the grand jury and the prosecutor's analysis of this evidence. Yet it is inarguable that releasing such information from the memoranda would disclose the subject matter of the overall investigations, the targets of those investigations, and the witnesses in those investigations. Because the subject matter, the targets, and the primary witnesses are the same, regardless of whether the investigation is characterized as conducted by the grand jury or by federal prosecutors, release of this information for the investigations generally would reveal the same information for the grand jury investigations. The dichotomy that Plaintiffs attempt to draw between the grand jury investigations and the investigations conducted by federal prosecutors falls apart in this context, where the Declination Memoranda summarize the results of the overall investigations, both as it was conducted in front of the grand jury and otherwise. In this context, to release information regarding one is to release information regarding the other.

For this reason, almost all of the cases cited in the Plaintiffs' brief are inapposite, as they almost uniformly address the factually distinguishable circumstance in which evidence that existed independent of any grand jury proceeding, that was gathered independently of the grand jury process, and that was not presented to the grand jury, was held to fall outside the ambit of Rule 6(e) because their contents could be disclosed without revealing anything at all about the grand jury.[1]  In *S.R. Mercantile Corp. v. Maloney*, 909 F.2d 79, 83 (2d Cir. 1990), for example, the documents at issue, which were seized by the Internal Revenue Service pursuant to a search warrant, were held not to implicate Rule 6(e) because they "had not been seized pursuant to a grand jury subpoena and had not been shown to the grand jury."  *Id.*  In *United States v. Eastern Air Lines, Inc.*, 923 F.2d 241, 244 (2d Cir. 1991), the Second Circuit similarly held that evidence that was obtained independently of the grand jury, and which had not been presented to the grand jury, was not protected by Rule 6(e).  In so holding, however, the Second Circuit did not create a bright-line rule that evidence gathered pursuant to a parallel criminal investigation can never be protected by Rule 6(e), noting instead that there "plainly may be circumstances when evidence that has not yet been, but will be, presented to the grand jury may properly be kept confidential" if its disclosure would reveal matters occurring before the grand jury.  *Id.* (citing *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1097 (7th Cir. 1992) (holding that FBI reports generated independently of a grand jury investigation could nonetheless fall within the

---

[1] The one exception is *In re Sealed Case No. 99-3091*, 192 F.3d 995, 1003 (D.C. Cir. 1999), which considered whether media reports that indicated that prosecutors wanted to seek an indictment of President Bill Clinton on perjury and obstruction charges impermissibly revealed grand jury information.  The D.C. Circuit concluded that they did not, even though "it would ordinarily be a violation of Rule 6(e) to disclose that a grand jury is investigating a particular person," only because the target of that investigation, President Clinton, had already made public the nature of grand jury proceeding during a national television appearance.  192 F.3d at 1004. In the present case, the subject matter and targets of the grand jury proceeding have not been made public, as discussed *supra*, and thus the contents of the memoranda remain protected by Rule 6(e).

ambit of Rule 6(e) if they would reveal the identities of the targets of a grand jury investigation and witnesses)).  To the extent there exists any information in the memoranda that concerns evidence gathered by federal prosecutors independently of the grand jury process, it would plainly fall within the situation hypothesized by the Second Circuit, whereby the release of such information would result in the disclosure of matters occurring before the grand jury.

Plaintiffs' reliance upon cases from other Circuits is similarly unavailing.[2]  As in *Eastern Air Lines*, the materials at issue in *In re Grand Jury Matter (Appeal of Catania)*, 682 F.2d 61, 64 (3d Cir. 1982), were not memoranda extensively discussing the substance of grand jury proceedings, but evidence obtained by the FBI independently of the grand jury process, such as tape recordings of consensually monitored conversations, documents obtained without grand jury subpoenas, notes from FBI interviews of witnesses that took place outside the presence of the grand jury, and a prosecution memoranda that summarized only the information gathered during the FBI criminal investigation, and not evidence generated by the separate grand jury investigation.  *Id.*  Moreover, contrary to the Plaintiffs' suggestion, Pl. Br. at 14, the Third Circuit's Rule 6(e) inquiry did not end with its conclusion that the materials were generated independently of the grand jury process.  The court went on to consider whether this was "a case where information developed independently of but presented to a grand jury could disclose

---

[2] The Government notes further that several Circuits apply a different standard than the Second Circuit in determining whether information is covered by Rule 6(e).  In the Second Circuit, the governing test is whether the information at issue "may tend to reveal what transpired before" the grand jury.  *Eastern Air Lines*, 923 F.2d at 244; *cf. In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996) ("[W]hen the district court finds that disclosure of the confidential information might disclose matters occurring before the grand jury, the information should be protected by Rule 6(e).").  In contrast, the standard applied by the Tenth Circuit is whether "disclosure is certain to destroy the protections of Rule 6(e)."  *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir. 1987).  *See also United States v. Dynavac, Inc.*, 6 F.3d 1407, 1412-14 (9th Cir. 1993) (discussing generally the different approaches courts have taken in determining whether evidentiary materials constitutes matters occurring before the grand jury).

would transpired before the grand jury." *Id.* The Third Circuit held that, because it was not possible to tell from the evidence itself, standing alone, whether any of the material was ultimately presented to a federal grand jury, release of such information would not fall within the ambit of Rule 6(e) because it would not reveal what occurred before a grand jury.

The Tenth Circuit has taken a similar approach, focusing not only on the source of the information, but on whether the disclosure "in the particular context" presented "would in fact reveal what was before the grand jury." *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir. 1987). In *Anaya*, the Tenth Circuit concluded that Rule 6(e) did not extend to information gathered during a parallel criminal investigation that was not presented to the grand jury. In so ruling, the Tenth Circuit distinguished cases (like this one) in which the evidence at issue had been presented to the grand jury, as well as cases (also like this one) involving documents that discussed the "scope, focus and direction" of grand jury investigations. *Id.*

The cases cited by Plaintiffs thus underscore that the memoranda at issue here are protected by Rule 6(e). The memoranda do not outline the strategy for investigations that existed separate from and independent of a grand jury's investigation. Rather, they describe the "scope, focus and direction" for investigations that were in fact conducted before a federal grand jury. *Id.* Accordingly, the disclosure of any substantive information from these memoranda would tend to reveal what actually transpired before the grand jury, and thus cannot be reasonably segregated from the documents. *See, e.g.*, *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 82 (2d Cir. 2002) (non-exempt material was too intertwined with exempt material to require disclosure).

Relying on *In re Grand Jury Investigation (Lance v. United States Dep't of Justice)*, 610 F.2d 202, 217 (5th Cir. 1980), Plaintiffs additionally argue that a prosecutor's recommendations

regarding whether to seek an indictment, or a prosecutor's opinion as to a potential defendant's criminal liability, are not themselves matters occurring before the grand jury, and that those portions of the memoranda that contain the Durham team's analysis and opinions therefore should be segregated and disclosed. Pl. Br. at 15. But the key language in *Lance* is that such recommendations and opinions are not protected "provided, of course, [that they do] not reveal the grand jury information on which [they are] based." 610 F.2d at 217. In the instant case, Mr. Durham has established that the memoranda *do* reveal protected and secret grand jury information. Indeed, the Declination Memoranda, in assessing whether an indictment should be sought, include "extensive analyses of the substantial volume of evidence gathered during the grand jury's investigation." Durham Decl. ¶ 11. Thus, under the fact-specific inquiry required under Rule 6(e), the record amply demonstrates that the disclosure of these memoranda in their entirety would tend to reveal matters occurring before the grand jury.

Contrary to Plaintiffs' claim, the Government's position in this case is consistent with the position taken in *United States v. Skelos*, 15 Cr. 317 (KMW). Pl. Br. at 13. At issue in *Skelos* was whether the defendants had made a *prima facie* showing that Government attorneys had *leaked* grand jury material to the press. The Government argued, *inter alia*, that references in the media to a federal "investigation" into the activities of the defendants were not sufficient, standing alone, to establish that Government attorneys had disclosed information about matters occurring before the grand jury, in light of the fact that the Government had also conducted a wide-ranging investigation independently of the grand jury, which included witness interviews, materials obtained through search warrants, and wiretap orders. Government's Memorandum of Law in Opposition to the Defendants' Pretrial Motion ("Skelos Br."), attached as Exhibit A to the Declaration of David McCraw, dated June 10, 2016, at 72, 78-80. In that case, the

Government argued that the defendants had not demonstrated a sufficient nexus between evidence that had not been presented to the grand jury and any secret aspect of the grand jury's operations. *Id.*

In contrast, the memoranda at issue here concern investigations that were in fact conducted by a federal grand jury and that disclose what actually transpired before a federal grand jury. The disclosure of such memoranda would necessarily reveal exactly what Rule 6(e) was intended to protect—the secret workings of the grand jury, including the subject matter of its investigations, the targets of its investigations, the identity of witnesses who testified before the grand jury, the substance of their testimony, documents obtained by grand jury subpoena, the contents of discussions with grand jurors, and the prosecutor's strategy before the grand jury. Durham Decl. ¶¶ 11-12. Thus, the nexus between disclosure of documents and revelation of a secret aspect of the grand jury's operations that was lacking in *Skelos* is present in the instant case.[3]

---

[3] Plaintiffs have also noted an apparent contradiction between the Government's position in this case and in the *Skelos* case regarding the protection of documents, such as business records, obtained by the Government pursuant to grand jury subpoena. *See* Pl. Br. at 13. *Skelos* was a criminal case where the defendants alleged—insufficiently, as the Court found—that the Government had improperly leaked grand jury information. See *United States v. Skelos*, 2015 WL 6159326 (S.D.N.Y.). *Skelos* did not involve the circumstances under which documents obtained via grand jury subpoena might properly be disclosed by the Government or obtained by a third party. Although the Government's memorandum in *Skelos* noted this Office's "conservative approach in . . . limiting disclosure of documents produced to the grand jury," *see* Government's Skelos Brief at 75 n.25 (attached as Exhibit A to Declaration of David McCraw), the out-of-circuit cases the Government cited in *Skelos* take a more liberal approach to the question. Accordingly, although the question has little relevance in this case because the Government argues that the Durham memoranda are exempt in their entirety, and not just those discrete portions describing documents obtained by grand jury subpoena, we believe it useful to clearly state the Government's position regarding documents subpoenaed by the grand jury, lest any misapprehension continue. Specifically, it is the position of this Office that documents obtained via grand jury subpoena are subject to grand jury secrecy protections. Not every circuit follows this rule—*see, e.g*., *United States v. Dynavac, Inc*., 6 F.3d 1407, 1412-14 (9th Cir. 1993), discussing four different approaches used by various circuits—but we believe it is consistent

### C. Any Public Interest in Disclosure Is Not a Valid Consideration in Determining Whether Documents are Properly Withheld Under Exemption 3

Plaintiffs appear to suggest that this Court should order disclosure of Rule 6(e) materials merely because in their view there would be great deal of public interest in this information. In particular, Plaintiffs cite to remarks made by former Attorney General Holder discussing his personal wish that "there were a way" for the public to access these memoranda so that the public could appreciate the thoroughness of the underlying investigations, although recognizing that the memoranda are protected as grand jury materials. Pl. Br. at 8. There is no legal support for the proposition that Exemption 3 can be overcome upon a finding that disclosure is in the public interest, however. To the contrary, in a FOIA suit the Court is not permitted to balance the interest in continued secrecy against a particular interest in disclosure. *Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 868-69 (D.C. Cir. 1981). Moreover, in making this argument, Plaintiffs ignore the equally important interests that are enshrined in Rule 6(e), which include protecting the "'accused who is exonerated from the disclosure of the fact that he has been under investigation.'" *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 n.6 (1958) (citation omitted). These important protections do not disappear each time a particular criminal investigation touches upon a matter of public importance.

### D. The Recommendation Memoranda Are Exempt as Documents that Outline the Scope, Direction and Subject Matter of Contemplated Criminal Investigations That Were Conducted Before a Federal Grand Jury

Finally, Plaintiffs direct certain of their arguments to the withholding of the Recommendation Memoranda in particular. For example, Plaintiffs argue that "the Recommendation Memoranda concern an investigation, not a grand jury presentment, and

---

with Second Circuit law and practice. *See, e.g.*, *In re Grand Jury Investigation B-15-1*, No. 16-mc-4, 2016 WL 110002 at *3-*5 (D. Conn. Jan. 8, 2016).

therefore fall outside the scope of Rule 6(e)." Pl. Br. at 15. But Mr. Durham's declaration demonstrates that the Recommendation Memoranda outline prosecutorial strategies for investigations that were largely conducted before a federal grand jury, and not investigations that were entirely separate from and independent of the grand jury. Durham Decl. at ¶ 10 ("The two full criminal investigations that the investigative team subsequently conducted involved extensive grand jury proceedings."); *cf. In re Grand Jury Subpoena (John Doe No. 4 v. John Doe No. 1)*, 103 F.3d 234, 239 (2d Cir. 1996) (government investigation was sufficiently related to grand jury process that it fell within ambit of Rule 6(e)(5) and (6)). Because the Recommendation Memoranda would reveal the subject matter, the targets, the potential witnesses, and the strategy and focus of investigations that were conducted by a federal grand jury, they fall squarely within the scope of Rule 6(e). Durham Decl. ¶ 12.

Plaintiffs' further contend that, because the Recommendation Memoranda predate the commencement of the grand jury investigation, they cannot be protected by Rule 6(e). Pl. Br. at 14. Again, the law is to the contrary. The relevant standard is whether the document in question "may tend to reveal what transpired before" the grand jury, *Eastern Air Lines, Inc.*, 923 F.2d at 244, regardless of the date of the document's creation. Documents that outline the intended subject matters and targets of criminal investigations that will largely be conducted by a federal grand jury, the potential witnesses in such investigations, and the contemplated focus and prosecutorial strategy in such investigations, clearly meet this standard.

Plaintiffs have not identified any case in which a memorandum outlining prosecutorial strategy for a criminal investigation to be conducted before a federal grand jury has been held to fall outside the ambit of Rule 6(e) simply because it predates the commencement of the grand jury investigation itself. Indeed, the only case cited by Plaintiffs that addresses the issue of

timing, *In re Grand Jury Investigation (Lance)*, 610 F.2d at 216, runs counter to their position. Pl. Br. at 15. In *Lance*, the Fifth Circuit held: "We construe the secrecy provisions of Rule 6(e) to apply not only to disclosures of events which have already occurred before the grand jury, such as a witness's testimony, but also to disclosures of matters which will occur, such as statements which reveal the identity of persons who will be called to testify or which report when the grand jury will return an indictment." *Id.* at 216-17; *see also In re Motions of Dow Jones & Co., Inc.,* 142 F.3d 496, 500 (D.C. Cir. 1998) ("'[M]atters occurring before the grand jury' [] includes not only what has occurred and what is occurring, but also what is likely to occur.").

Nor have Plaintiffs addressed the authorities cited in the Government's moving brief, which clearly hold that memoranda seeking authority to commence a grand jury investigation are protected under Rule 6(e), as are prosecutors' notes regarding the strategy and tactics to be employed in a grand jury proceeding. Gov't Br. at 11 (citing cases); *see also Petition of United States for Disclosure of Grand Jury Matters (Miller Brewing Co.)*, 518 F. Supp. 163, 166 (E.D. Wisc. 1981) (agent's original request for a grand jury investigation, which set forth the results of prior investigative efforts along with recommendations for the course of the grand jury investigation, was protected under Rule 6(e)), *modified on other grounds*, 687 F.2d 1079 (7th Cir. 1982). Accordingly, Plaintiffs' argument that the Recommendation Memoranda are not protected by Rule 6(e) merely because they precede in time the commencement of grand jury proceedings is without any legal support.

## POINT II

### THE GOVERNMENT AMPLY DEMONSTRATED THAT FOIA EXEMPTIONS 1 AND 3 PROTECT DISCRETE CATEGORIES OF NATIONAL SECURITY INFORMATION

As described in the Government's opening brief, the Government invoked FOIA Exemptions 1 and 3 to withhold six discrete categories of national security information contained

in the Durham memoranda. *See* Gov. Br. at 12-22. Plaintiffs do not challenge the Government's withholding of three of those categories: (1) dissemination control markings; (2) the identities of CIA personnel; and (3) the identities of confidential human intelligence sources. *See* Pl. Br. at 18. The Court should thus grant summary judgment to the Government as to the withholding of this information.

Contrary to Plaintiffs' argument, the Government has also demonstrated that the memoranda's discussion of (1) details concerning foreign liaison services; (2) the locations of covert CIA installations and former detention centers located abroad; and (3) descriptions of specific intelligence methods and tradecraft that are still in operational use, all comfortably fall within the scope of Exemptions 1 and 3. As discussed below, Plaintiffs' opposition rests upon a misstatement of the governing standards, unfounded assumptions, and a selective presentation of the Government's supporting declarations.

### A.  Exemption 1 Protects The Withheld Categories of Classified Information

As an initial matter, Plaintiffs improperly attempt to minimize the substantial deference owed to the Executive's protection of national security information. While Plaintiffs acknowledge that courts must accord "substantial deference" to an agency's declaration pertaining to matters of national security, Pl. Br. at 20, they attempt to downplay this obligation by asserting that courts may and should "second-guess" classification decisions and in so doing apply a *de novo* standard of review, *id.* at 19. Such an approach contravenes the governing law in this Circuit (and the D.C. Circuit), as set forth in the Government's opening brief. *See generally* Gov. Br. at 13-14 (citing cases, including, *e.g.*, *Wilner v. NSA*, 592 F.3d 60, 76 (2d Cir. 2009) ("it is bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies" regarding whether disclosure of information "would pose a

threat to national security" (quotation marks omitted)); *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) ("The judiciary is in an extremely poor position to second-guess the predictive judgments made by the government's intelligence agencies" regarding national-security questions (quotation marks omitted))).  The legislative history cited by Plaintiffs, Pl. Br. at 19, provides no help either, as that same history also makes clear that courts conducting "*de novo*" review in the Exemption 1 context must give "substantial weight" to government declarations providing "details of the classified status of the disputed record[s]."  H.R. Conf. Rep. No. 93-1380, at 12 (1974).  Indeed, Congress expressly recognized that "the Executive departments responsible for national defense and foreign policy matters" possess "unique insights into what adverse [national-security] [e]ffects might occur as a result of public disclosure."  *Id.*

As to the specific categories of classified information in dispute, Plaintiffs inexplicably contend that they are unable to determine what the Government seeks to protect as "details concerning foreign liaison services."  According to Plaintiffs, "it is unclear what precisely the Government intends to redact:  just the source of the information or the information itself?  All information or some discrete categories?"  Pl. Br. at 22.  But the answers to these questions are contained in the supporting declaration.  As the CIA's declarant states, the Government is protecting "the content of . . . communications" between the United States and foreign liaison services and foreign government officials, "as well as the mere fact of the existence" of our relationships with them, because "foreign liaison services and foreign government officials provide sensitive intelligence in the CIA in confidence."  Declaration of Jan M. Payne, dated April 27, 2016 ("Payne Decl.") ¶ 10.  Moreover, Plaintiffs accept that national security harm can reasonably be expected to result from the disclosure of certain foreign relationships.  Pl. Br. at

22.  Indeed they must—under Executive Order 13,526, section 11.1(d), the unauthorized disclosure of foreign government information is presumed to cause damage to the national security, and courts have long recognized the legitimacy of withholding this information.  *See* Gov. Br. at 16.

Similarly unpersuasive is Plaintiffs' challenge to the Government's withholding of the locations of CIA installations and former detention centers located abroad.  Plaintiffs accuse the Government of "fail[ing] to level about the extent of the redaction proposed," stating that detainee Gul Rahman died in Afghanistan and detainee Manadel al-Jamadi in Iraq, and that officials in Poland and Romania acknowledged the existence of CIA sites in their borders.  Pl. Br. at 22.  Even if true, none of this is relevant.  The Government has never officially acknowledged the identity of the detainees who are the subject of the memoranda at issue, so the locations where Mr. Rahman and Mr. al-Jamadi died are simply not germane to the CIA's withholding of the locations of covert facilities identified in the Durham memoranda.  And as the Government noted in its opening brief, while the SSCI Report publicly discusses the treatment of certain detainees, it maintains redactions of all CIA covert facilities and installations referenced therein.  *See* Gov. Br. at 17-18.  As to what Poland and Romania may or may not have revealed, governing caselaw establishes that such statements cannot function as an official acknowledgement of the U.S. Government, or otherwise operate to declassify or waive the CIA's protection of this information under Exemption 1.  *See Mobley v. CIA*, 806 F.3d 568, 583-84 (D.C. Cir. 2015) (foreign government cannot waive agency's ability to protect classified information under FOIA); *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009); *see also New York Times v. DOJ*, 756 F.3d 100, 120 n.19 (2d Cir. 2014) (recognizing that *Wilson* "remains the law of this Circuit").  This case is a prime example of why this principle makes sense: as the

Government's opening brief explained, an official acknowledgment that the CIA has operated or is operating in a particular country can reasonably be expected to harm foreign relationships and prompt the identified country and/or adversaries to take damaging countermeasures—whether or not such information is known to the public by other means. Gov. Br. at 17. These predictions of harm are logical and plausible, and Plaintiffs do not challenge them.

Third, Plaintiffs challenge the Government's withholding of intelligence methods and tradecraft still in operational use[4] –indeed they purport to be "baffl[ed]" as to why such information is contained in the Durham memoranda, Pl. Br. at 23—and they fault the Government for not explaining "*why* or *where* exactly information about intelligence sources and methods comes into play in memoranda discussing torture and homicide," *id*. at 21-22 (emphasis added). But to justify its withholdings, the Government is not required to explain "why" or "where" intelligence methods are used in connection with the underlying events investigated by Durham. Rather, as relevant here, to withhold information under Exemption 1, the Government need only show that the material at issue is properly classified, including that it falls within one of the categories of classifiable information set forth in Section 1.4 of E.O 13,526, and that its disclosure could reasonably be expected to result in national security harm. *See generally* Gov. Br. at 12-13. The CIA declarant's assertion that the Durham memoranda contain information concerning intelligence methods and tradecraft still in operational use is entitled to a presumption of good faith, which is not undermined by Plaintiffs' purported bewilderment.[5] *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994).

---

[4] Plaintiffs mount no challenge to the subcategories of operational details withheld by the CIA consisting of funding amounts associated with a particular program or operation or the precise dates of particular operations and communications. *See* Gov. Br. at 18-19.

[5] The Government has endeavored to disclose as much information as possible, consistent with its obligation to protect national security. However, in the event the Court requires

Overall, Plaintiffs accuse the Government of "tr[ying] to make its case through the usual generalities about the importance of national security, the need to protect intelligence secrets, and the wished-for judicial deference in FOIA cases dealing with the war on terrorism." Pl. Br. at 18-19. But this overarching accusation is noticeably untethered to any of the specific arguments Plaintiffs advance, and, as is apparent from the Government's response above and its opening brief and declaration, is simply not true. In fact, the Government's declarant has described the categories of information at issue quite specifically, to the maximum extent possible on the public record, and has reasonably explained why the disclosure of such information is reasonably likely to result in national security harm. Courts have repeatedly sustained the withholding of similar information *see* Gov. Br. at 15-19—a fact that Plaintiffs do not rebut. For all these reasons, the Government is entitled to summary judgment on its Exemption 1 claims.

## B. Exemption 3 Also Protects The Withheld Categories of Information

Plaintiffs fare no better in challenging the Government's showing that the three disputed categories of national security information (details concerning foreign liaison services, the locations of covert CIA installations and detention centers located abroad, and operational intelligence methods and tradecraft ) all also fall within the purview of the National Security Act, 50 U.S.C. § 3024(i)(1) and/or the CIA Act, 50 U.S.C. § 3507—withholding statutes that Plaintiffs concede are broad in scope. Pl. Br. at 23.

Plaintiffs simply rehash the arguments made in opposing the Government's Exemption 1 claim, erroneously claiming that the Government "throws out broad descriptions of topics that might be protected under the statute[s] . . . but offers no discussion of what kind of information is

additional detail, the Government will prepare submit a classified declaration *ex parte*, for *in camera* review.

actually in the memoranda and deserving of protection." Pl. Br. at 24. Again, Plaintiffs' characterization is belied by the Government's supporting declaration, which describes the categories of information at issue in sufficient and reasonable detail. *See* Payne Decl. ¶¶ 10, 12, 13, 15; *see id.* ¶¶ 19-20; Gov. Br. at 21-22. As the Government discussed in its opening brief, numerous courts have found that similarly-described information is properly withheld pursuant to the National Security Act and/or CIA Act. Gov. Br. at 21-22. That the Exemption 3 analysis in this case is simple and straightforward does not render the Government's argument suspect.

Plaintiffs also claim—again—that "the Government leaves the Court guessing as to what role sources and methods play in memoranda by DOJ prosecutors looking into two homicides." Pl. Br. at 24. As discussed in connection with Plaintiffs' Exemption 1 argument, this is a red herring. Nothing in the law requires the Government to provide this information in connection with establishing its Exemption 3 claim, nor does the absence of such information cast any doubt on the applicability of Exemption 3, the National Security Act or the CIA Act.

Finally, Plaintiffs claim that the Government is "unclear" as to what it is protecting pursuant to Section 6 of the CIA Act, and cite a case requiring the agency to expressly delineate the material withheld under the CIA Act, as opposed to the National Security Act. Pl. Br. at 24 n.22. But as the Payne Declaration demonstrates, that is exactly what the Government did. As to the three categories of national security information in dispute, the Government has invoked both the National Security Act and CIA Act to protect the details of foreign liaison relationships, Payne Decl. ¶¶ 19, 20, and the National Security Act to protect the locations of covert CIA facilities abroad and intelligence methods and tradecraft, *id.* ¶ 19. *See also* Gov. Br. at 21-22.

The Government has provided ample information demonstrating that the disputed categories of national security information comfortably fall within the protection of the National

Security Act and/or CIA Act.  Accordingly, even if such information was not protected pursuant to Exemption 1, Exemption 3 provides a separate and independent basis for granting the Government summary judgment.

## POINT III

### THE GOVERNMENT PROPERLY INVOKED FOIA EXEMPTION 5 TO WITHHOLD A VERY LIMITED AMOUNT OF INFORMATION IN THE DURHAM MEMORANDA

In its Opinion and Order dated September 30, 2015 (the "September Opinion" or "Opinion"), the Court held that certain press statements of the Attorney General triggered application of the express adoption doctrine to five of the Durham memoranda.  (Opinion at 17-22).  The Court recognized, however, that portions of the five memoranda that "do not support— or even explicitly concern—Durham's reasoning regarding the sufficiency of the evidence or the applicable federal law" remain protected as privileged under Exemption 5.  (*Id.* at 21). Responding to the Court's direction, the Government identified those portions of the Durham memoranda that did not pertain to Durham's reasoning and addressed them in its opening brief on these motions.  *See* Gov. Br. at 24-25; *see also generally* Declaration of Christina M. Butler dated May 13, 2016 ("Butler Decl.").

Plaintiffs' claim that the Government has relied on the Court's so-called "carve-out" to "sweep large sections of the memoranda from public view," Pl. Br. at 25, is demonstrably false. First, of the five memoranda at issue, the Government determined that under the reasoning of the Court's Opinion, three of them (the "Declination Memoranda") would no longer be protected by Exemption 5.  Butler Decl. ¶ 6.[6]  Of the remaining two memoranda (the "Recommendation Memoranda"), the Government asserted that only the Procedural Background sections—only 4

---

[6] The Government respectfully disagrees with the Court's express adoption reasoning and reserves the right to seek appellate review of that ruling.

of 31 pages of Durham's analysis—and the exhibits could continue to be withheld under the reasoning of the Court's Opinion. *Id.* ¶ 11; Declaration of Douglas Hibbard dated Dec. 9, 2014, Ex. C. Thus, contrary to what Plaintiffs would have this Court believe, the Government applied Exemption 5 quite narrowly in light of the Court's ruling.

Plaintiffs point to the Court's statement that the Government could continue to withhold only those portions of the memoranda that "do not support—or even explicitly concern—Durham's reasoning," and interpret that to mean that everything that "supports" Durham's reasoning is no longer deserving of Exemption 5 protection. Pl. Br. at 26. Thus, according to Plaintiffs' interpretation, "all materials contributing to Mr. Durham's conclusion about sufficiency must be disclosed, whether they are factual materials, procedural recitations, or legal discussions," including the exhibits to the Recommendation Memoranda and the Procedural Background sections therein. Pl. Br. at 26.

Plaintiffs' strained interpretation of the Court's opinion would lead to absurd results. The Court's statement was made in the context of describing what it had held that the Attorney General expressly adopted through certain press statements. As the Court explained, "DOJ should not be required to disclose those portions of the memorandum that do not support the reasoning on which *the Attorney General* relied." (Opinion at 21 (emphasis added)). The Attorney General did not rely on investigations and analysis that pre-dated Durham's appointment, which is what the Procedural recitations and exhibits to the Recommendation Memoranda reflect. Butler Decl. ¶¶ 12, 13-15, 20-21. Instead, per the Court's September Opinion, the Attorney General relied on *Mr. Durham's* reasoning and analysis, all of which is contained in the body of his memoranda. *Id.* ¶ 13.

If Plaintiffs' interpretation of the Court's ruling was correct (and it is not), it would mean that the Attorney General would have adopted every piece of evidence cited by Durham in his memoranda, as all of it "supports" Durham's reasoning. This is plainly not what the Court intended, and in any event would constitute a dramatic, unprecedented expansion of the express adoption doctrine.

Accordingly, the Procedural Background sections and the exhibits to the Recommendation Memoranda were not adopted by the Attorney General and remain properly protected under Exemption 5. The Court should thus grant summary judgment to the Government as to these withholdings.

## POINT IV

### THE GOVERNMENT ADEQUATELY JUSTIFIED INVOCATION OF FOIA EXEMPTIONS 6 AND 7(C) TO PROTECT IDENTIFYING INFORMATION OF THIRD PARTIES CONTAINED IN CRIMINAL INVESTIGATORY MEMORANDA

In challenging the Government's withholding of identifying information of witnesses, investigatory targets, covert and overt CIA personnel, foreign officials, and human sources[7] from memoranda concerning criminal investigations into the controversial treatment of detainees, Plaintiffs argue that the Government did not describe the "role that various categories of people actually play in the memoranda" or "establish[] more concretely that there has been no waiver of a person's privacy interest." Pl. Br. at 29.

Plaintiffs are attempting to impose burdens on the Government that are not supported by the case law. First, courts routinely hold that Exemptions 6 and 7(C) generally protect third-party identifying information contained in law enforcement files in light of the substantial

---

[7] The Government notes that it has also invoked Exemption 3 to protect the identities of covert and overt CIA personnel, human sources, and foreign officials. Payne Decl. ¶¶ 19-20. Plaintiffs did not challenge the applicability of Exemption 3 to the identities of covert and overt CIA personnel and human sources. *See* Pl. Br. at 18, 23-24.

privacy rights at stake and the minimal to non-existent public interest in disclosure. In *SafeCard Services Inc. v. SEC*, 926 F.2d 1197, 1205-06 (D.C. Cir. 1991), the D.C. Circuit held that Exemption 7(C) "categorically" protects private information contained in law enforcement records unless there is "compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to the names of private individuals appearing in the agency's law enforcement files is necessary to confirm or refute that evidence." *Accord Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir 1995); *cf. Long v. Office of Personnel Mgmt.*, 692 F.3d 185 (2d Cir. 2012) (withholding of names of entire classes of employees proper notwithstanding lack of individual inquiry). Second, in making a good faith withholding of third-party identifying information under Exemptions 6 or 7(C), the Government does not bear the burden of scouring publicly available information to ensure that the privacy interests it seeks to protect have not been waived. The cases Plaintiffs cite do not stand for that proposition; rather, they concern instances where a FOIA requester has put forward evidence that a particular third party made his involvement in a matter public, where the information requested is inherently public (*e.g.*, court records)[8], or where the agency at issue has brought public charges against the target of an investigation. *See* cases cited at Pl. Br. at 28. Nothing analogous is present here.

In this case, moreover, the privacy interests of the third parties whose identities have been withheld (witnesses, investigatory targets, covert and overt CIA personnel, foreign officials, and human sources) are at their apex. *See Fitzgibbon v. CIA*, 911 F.2d 755, (D.C. Cir. 1990) ("We

---

[8] It should be noted, however, that information contained in court records is not necessarily stripped of Exemption 7(C) protection. *See, e.g.*, *U.S. DOJ v. Reporters Comm. For Freedom of the Press*, 109 S. Ct. 1468 (1989) (upholding withholding of criminal rap sheets under Exemption 7(C) even though information contained and compiled in rap sheets is publicly available in various court records).

have said quite recently that [e]xemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." (internal quotation marks and citation omitted)); *see also PETA v. Nat'l Institutes of Health*, 745 F.3d 535, 541 (D.C. Cir. 2014) (citing cases). The association of each of these categories of individuals with high-profile criminal investigations concerning the CIA's controversial detention and interrogation program implicates acute and extraordinarily sensitive privacy interests, regardless of the specific role any particular individual may have played in the investigations. Indeed, Mr. Durham has confirmed that revealing the identifying information of those connected with his investigations could subject those individuals to harassment or embarrassment. Durham Decl. ¶ 15; *see also* Payne Decl. ¶ 22. These strong privacy interests have not been waived. Durham's investigations did not lead to the filing of any public charges, and Plaintiffs have failed to point to any public information linking any particular individual within the relevant categories to Durham's investigations.

On the other hand, Plaintiffs do not dispute that revealing the identifying information of these third parties would not shed any additional light on DOJ's conduct or performance of its duties. On this point, their brief is silent. Accordingly, summary judgment should be granted to protect the identifying information of targets, witnesses, foreign officials, overt and covert CIA personnel, and human sources pursuant to Exemptions 6 and 7(C).

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the Government's moving papers, DOJ's motion for partial summary judgment should be granted.

Dated: New York, New York
July 8, 2016

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By:     /s/ *Jeannette A. Vargas*
        Jeannette A. Vargas
        Tara M. LaMorte
        Assistant United States Attorneys
        86 Chambers Street
        New York, New York 10007
        (212) 637-2678/2746 (tel)
        Jeannette.Vargas@usdoj.gov
        Tara.Lamorte2@usdoj.gov