UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY and
CHARLIE SAVAGE,

                              Plaintiffs,                    14-CV-3777 (JPO)

             -v-                                            OPINION AND ORDER

THE UNITED STATES DEPARTMENT OF
JUSTICE,

                              Defendant.

J. PAUL OETKEN, District Judge:

        Plaintiffs Charlie Savage and the New York Times Company (collectively "the Times")

filed this action against Defendant the United States Department of Justice ("DOJ" or "the

Government") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  The Times

seeks disclosure of five memoranda related to DOJ's investigation into whether certain overseas

interrogations by the Central Intelligence Agency ("CIA") and the deaths of detainees in CIA

custody violated federal law.  On September 30, 2015, this Court upheld the withholding of all

but the five memoranda at issue in this case.  (Dkt. No. 33 ("September Order"), at 17-22.)  The

parties have cross-moved for partial summary judgment on the question whether the requested

memoranda are exempt from disclosure under FOIA Exemptions 1, 3, 5, 6, and 7(C).  For the

reasons that follow, the parties' cross-motions are granted in part and denied in part.

I.      Introduction

        Familiarity with the underlying facts and procedural history, as described in the Court's

September Order, is presumed.  (*See* Dkt. No. 33.)

        The five memoranda at issue were prepared by John Durham.  (*See* Dkt. No. 49 at 5-6.)

In August 2009, Mr. Durham, then an Assistant United States Attorney in Connecticut, was

appointed by Attorney General Eric Holder to lead an investigation into whether federal laws had been violated in connection with the interrogation of certain detainees by the CIA at overseas locations.  (Dkt. No. 43 ("Durham Decl.") ¶¶ 5-6.)  Mr. Durham primarily investigated the legality of the interrogation techniques used by CIA interrogators in 101 detainee cases and produced a final report on May 26, 2011 ("the Preliminary Review Memorandum").  (*See id.* ¶ 7; Dkt. No. 44 at 3.)  The Preliminary Review Memorandum concluded that, with the exception of two cases involving individuals who died while in custody, no criminal investigations should be pursued.  (Durham Decl. ¶ 7.)

Mr. Durham prepared two additional reports on the two remaining cases ("the Recommendation Memoranda"), which were submitted on December 14, 2010, and May 26, 2011.  (*Id.* ¶ 8.)  These cases involved two detainees who died while in the custody of the United States in overseas detention centers.  (*Id.*)  The Recommendation Memoranda informed the Attorney General that, under the governing standards, full criminal investigations were warranted and recommended a strategy for the investigation, including the targets of the investigation, the witnesses to interview, and the evidence to develop.  (*Id.*)  The Recommendation Memoranda also contained eleven exhibits, which are "a collection of historical, procedural, factual and evidentiary records," including "emails, letters, legal memoranda, reports, and depositions."  (Dkt. No. 42 ("Butler Decl.") ¶ 13.)  On June 30, 2011, the Attorney General accepted recommendations contained in the Preliminary Review Memorandum and the Recommendation Memoranda and announced his intention to open two full criminal investigations, closing the remaining matters.  (Durham Decl. ¶ 9.)

What followed were two full criminal investigations involving grand jury proceedings, including the issuance of grand jury subpoenas.  (*Id.* ¶ 10.)  However, no indictments were issued as a result of the investigations.  (*Id.*)  On March 14, 2012, and July 11, 2012, Mr. Durham

submitted two reports to the Attorney General and Deputy Attorney General, each explaining his conclusion that the criminal investigations into the deaths of the two detainees should be closed without further action ("the Declination Memoranda").  (*Id.*)  On August 30, 2012, the Attorney General announced the closing of the two investigations.  (*Id.*)

With respect to the five memoranda at issue, this Court previously concluded that the Attorney General's reliance—both in the June 2011 press release and the August 2012 statement—on the reasoning in the documents to justify his actions triggered the express adoption doctrine, thereby exempting them from protection under FOIA Exemption Five.  (*See* Dkt. No. 33 at 17-22.)  Therefore, in its September Order, the Court denied DOJ's motion for partial summary judgment as to those memoranda and granted the Times' motion.  (*Id.*)

In the September Order, however, the Court also "acknowledge[d] that the application of the express adoption doctrine to Durham's memoranda in this case presents challenging questions."  (*Id.* at 20.)  It noted that it may well be the case that "DOJ should not be required to disclose those portions of the memorandum that do not support the reasoning on which the Attorney General publicly relied," and invited the parties to move for partial summary judgment on whether the memoranda must be disclosed in their entirety or only partially, and whether other FOIA exemptions preclude disclosure of these memoranda.  (*Id.* at 20-22.)

DOJ moves for partial summary judgment, asserting the documents were properly withheld in whole or in part under FOIA Exemptions 1, 3, 5, 6, and 7(C).  The Times cross-moves for summary judgment that the memoranda should be made public, with limited redactions.

## II.     Discussion

The parties dispute both the application and scope of the exemptions.  The Court first

describes the proper legal standard for FOIA cases on summary judgment before turning to each

of the exemptions claimed by DOJ and their application to the five memoranda at issue.

### A.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As with

the previous round of summary judgment motions, "[b]oth parties move for summary judgment

and neither party disputes the facts, so the question is which party prevails as a matter of law

with respect to each set of documents."  (Dkt. No. 33 at 6.)

FOIA cases are typically resolved on summary judgment.  *See Adamowicz v. IRS*, 552 F.

Supp. 2d 355, 360 (S.D.N.Y. 2008) (citing *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d

Cir. 1994)).  This Court reviews *de novo* DOJ's decision to withhold information.  *See* 5 U.S.C.

§ 552(a)(4)(B).  To prevail, "the defending agency has the burden of showing . . . that any

withheld documents fall within an exemption to the FOIA."  *Carney*, 19 F.3d at 812; *see* 5

U.S.C. § 552(a)(4)(B).  The agency may satisfy this burden through "[a]ffidavits or

declarations . . . giving reasonably detailed explanations why any withheld documents fall within

an exemption."  *Carney*, 19 F.3d at 812.  These affidavits and declarations are "accorded a

presumption of good faith."  *Id.* (quoting *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200

(D.C. Cir. 1991)) (internal quotation marks omitted).  As such, where the agency's submissions

are "adequate on their face," district courts "may 'forgo discovery and award summary judgment

on the basis of affidavits.'"  *Id.* (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

However, "disclosure, not secrecy, is the dominant objective of the Act."  *Dep't of Air

Force v. Rose*, 425 U.S. 352, 361 (1976).  Exemptions to disclosure are, therefore, afforded a

"narrow compass," *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989), in light of the underlying purpose of FOIA, which "was enacted to facilitate public access to Government documents" and "was designed to 'pierce the veil of administrative secrecy and open agency action to the light of public scrutiny,'" *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Rose*, 425 U.S. at 361.  Indeed, FOIA is intended to "promote honest and open government and to assure the existence of an informed citizenry 'to hold the governors accountable to the governed.'"  *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1245 (4th Cir. 1994)).

DOJ argues that the memoranda at issue are exempt from disclosure, in whole or in part, under Exemptions 1, 3, 5, 6, and 7(C).  First, the Court addresses whether DOJ has met its burden of demonstrating that four of the memoranda—the Recommendation and Declination Memoranda—were properly withheld in full under Exemption 3 on the basis that their disclosure would reveal matters occurring before the grand jury, pursuant to Federal Rule of Criminal Procedure 6(e).  After concluding that the requirement of grand jury secrecy justifies the withholding of the Declination Memoranda only, the Court turns to the alternative bases presented by DOJ for withholding portions of the remaining three memoranda, including exemptions based on national security, privacy interests, and the scope of the express adoption doctrine.

**B.    Exemption 3 – Documents Withheld Pursuant to Federal Rule of Criminal Procedure 6(e)**

The Court begins with Exemption 3, upon which the Government relies as a justification to withhold four of the five memoranda—the Recommendation and Declination Memoranda. (*See* Dkt. No. 44 at 8-11.)

Exemption 3 allows an agency to properly withhold records that are "specifically exempted from disclosure by [another] statute" if the relevant statute either "requires that the

matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(i)-(ii).  To meet its burden under Exemption 3, DOJ must demonstrate that the claimed statute is an exemption statute under FOIA and that the withheld material falls within its scope.  *See CIA v. Sims*, 471 U.S. 159, 167 (1985).

Here, the Government relies on Federal Rule of Criminal Procedure 6(e) as the statute justifying its withholding of the four memoranda at issue.  Rule 6(e) requires that all "matter[s] occurring before the grand jury" remain secret, with few exceptions that are not relevant to the present case.  Rule 6(e) is treated as a statute for purposes of Exemption 3 "because the Congress has enacted it into positive law."  *Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015); *see Local 32B–32J, Serv. Emps. Int'l Union, AFL–CIO v. GSA*, 1998 WL 726000, at *6 (S.D.N.Y. October 15, 1998) ("It is well established that [Fed. R. Crim. P. 6(e)], which imposes a general requirement of secrecy for information relating to the grand jury process, qualifies as an Exemption 3 withholding statute.").

The purpose of grand jury secrecy, as enshrined in Rule 6(e), is to ensure the proper functioning of the grand jury system.  The Supreme Court has articulated a number of interests served by this secrecy:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony.  Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements.  There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment.  Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979); *see also In re Grand Jury Subpoena*, 72 F.3d 271, 274 (2d Cir. 1995) (quoting same).

Rule 6(e) does not expressly define what constitutes a "matter occurring before the grand jury," but, "[a]t its core, Rule 6(e)(2) protects from disclosure evidence that is actually presented to the grand jury." *United States v. Skelos*, No. 15 Crim. 317, 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015). Rule 6(e) protection extends beyond the literal evidence presented directly to the grand jury, covering "anything that may tend to reveal what transpired before it"; however, it does not necessarily cover "information obtained independently of a grand jury investigation." *United States v. Eastern Air Lines, Inc.*, 923 F.2d 241, 244 (2d Cir. 1991). Rule 6(e)'s grand jury shield has thus been held to protect "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Sec. and Exch. Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc); *see also Skelos*, 2015 WL 6159326, at *10 (detailing a similar list of protected categories). "The pertinent question . . . is whether a particular proceeding is related to or affects a grand jury proceeding." *In re Grand Jury Subpoena*, 103 F.3d 234, 237 (2d Cir. 1996).

The parties disagree about the scope of grand jury secrecy. DOJ argues for a broad application of Rule 6(e), citing D.C. Circuit case law holding that "[t]he scope of [grand jury] secrecy is necessarily broad." (Dkt. No. 44 at 9 (second alteration in original) (quoting *Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 869 (D.C. Cir. 1981) (internal quotation mark omitted)).) DOJ argues that Exemption 3 applies where "the disclosed material would tend to reveal some secret aspect of the grand jury's investigation," where such a "tendency need only make a result more likely." (*Id.* (quoting *Murphy*, 789 F.3d at 209-10).)

The Times, in contrast, advocates a more circumscribed view of what constitutes a matter occurring before a grand jury.  It emphasizes that "Rule 6(e) does not require 'that a veil of secrecy be drawn over all matters occurring in the world that happens to be investigated by a grand jury,'" *Skelos*, 2015 WL 6159326, at *10 (quoting *Dresser Indus.*, 628 F.2d at 1382), and encourages this Court to engage in a "fact-specific inquiry" to determine whether the memoranda at issue are sufficiently related to matters occurring before the grand jury (Dkt. No. 49 at 12 (quoting *Skelos*, 2015 WL 6159326, at *10)).

### 1.    The Recommendation Memoranda

Focusing first on the Recommendation Memoranda, Mr. Durham testifies that "disclosure of these documents would . . . reveal matters occurring before the grand jury."  (Durham Decl. ¶ 12.)  In particular, he indicates that the documents contain "an in-depth recitation, analysis, and evaluation of the facts and evidence uncovered in the course of [his] preliminary reviews as well as supporting legal and factual justification for [his] recommendation that full criminal investigations were warranted under the governing standards."  (*Id.* ¶ 8.)  He states that the reports "further outlined the key areas [DOJ] would pursue in a full criminal investigation, including the targets of the proposed investigation, certain of the witnesses with whom [DOJ] intended to speak and the evidence [DOJ] intended to develop."  (*Id.*)  Mr. Durham goes on to testify that the disclosure of certain of the information in the memoranda, in combination with other public documents, would likely reveal the identity of the two decedents, information that has not been otherwise released.  (*Id.* ¶ 12.)

As described by Mr. Durham, the Recommendation Memoranda concern an independent investigation into whether to pursue a full criminal investigation and do not concern matters occurring before a grand jury.  As the Times points out, multiple courts of appeals, including the Second Circuit, have held that the disclosure of information "produced by a criminal

investigation that parallels but is independent of a grand jury investigation . . . is not a violation of grand jury secrecy because it is not a matter occurring before the grand jury." *In re Grand Jury Subpoena*, 103 F.3d at 238; *see also Eastern Air Lines*, 923 F.2d at 244; *Blalock v. United States*, 844 F.2d 1546, 1551 (11th Cir. 1988) (per curiam) (holding that the grand jury secrecy rule "does not protect from disclosure information obtained from a source other than the grand jury, even if the same information is later presented to the grand jury"); *In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 217 (5th Cir. 1980) ("[T]he disclosure of information obtained from a source independent of the grand jury proceedings, such as a prior government investigation, does not violate Rule 6(e).").  Simply put, courts consistently interpret Rule 6(e) as inapplicable to "disclosures of information obtained independently of the grand jury process, even if the same information might later be presented to the grand jury." *Skelos*, 2015 WL 6159326, at *10.  Rule 6(e) is not violated, therefore, by the disclosure of the Recommendation Memoranda, which contain information gathered from an independent investigation.[1]

DOJ's reliance on *Jimenez v. FBI*, 938 F. Supp. 21 (D.D.C. 1996), and *Linn v. U.S. Dep't of Justice*, No. 92 Civ. 1406, 1995 WL 631847 (D.D.C. Aug. 22, 1995), is unavailing.  (*See* Dkt. No. 44 at 11.)  In *Jimenez*, the court held that notes prepared "by an Assistant United States

---

[1]     And while Mr. Durham testifies that the disclosure of the Recommendation Memoranda would tend to reveal the identities of the individuals whose deaths are the subject of the investigation (Durham Decl. ¶ 12), DOJ cites no case, and this Court is aware of none, that places previously undisclosed identities of decedents, whose deaths are the subject of a grand jury proceeding, within the scope of Rule 6(e).  Such a broad read of Rule 6(e), moreover, would not serve the purposes of grand jury secrecy, which are aimed at ensuring the proper function of the grand jury system.  *See Douglas Oil Co.*, 441 U.S. at 219.  That is, the fact that the names of the decedents have not been released by the Government does not somehow insulate them from disclosure under FOIA.  "[A] test that permits an agency to deny disclosure because the agency thinks it best to do so (or convinces a court to think so, by logic or deference) would undermine 'the basic policy that disclosure, not secrecy, is the dominant objective of [FOIA].'"  *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 151 (2d Cir. 2010) (quoting *Rose*, 425 U.S. at 361).

Attorney in preparation for the case against the plaintiff to the grand jury" fell within the scope of Rule 6(e). *Jimenez*, 938 F. Supp. at 28.  But while notes in *Jimenez* detailed the strategy the attorney expressly intended to use in an upcoming grand jury proceeding, the Recommendation Memoranda in this case were prepared to advise the Attorney General as to whether full criminal investigations were warranted, the scope of which may or may not include some future grand jury proceedings.  The court in *Linn* similarly found that certain memoranda fell within the scope of Rule 6(e) as they were not "documents produced prior to the grand jury investigation and brought before the grand jury as evidence, but were created during the grand jury process exclusively for investigatory purposes."  *Linn*, 1995 WL 631847, at *29 (citation omitted).  Such is not the case here, as the memoranda predate the grand jury proceeding.  (Durham Decl. ¶ 12.)

The Court, therefore, grants summary judgment to the Times as to the inapplicability of Rule 6(e), as applied through FOIA Exemption 3, to the Recommendation Memoranda.

### 2.    The Declination Memoranda

Turning to the Declination Memoranda, the Court concludes that the Government has sufficiently demonstrated that disclosure of the information identified in those memoranda falls within Rule 6(e), and is therefore properly withheld.  Mr. Durham testifies that the Declination Memoranda were prepared after "extensive grand jury proceedings, including the issuance of grand jury subpoenas for witness testimony and documents."  (Durham Decl. ¶ 10.)  The memoranda embody his "determination[] that the criminal investigations should be closed without further action."  (*Id.*)  He further notes that the memoranda "reveal matter that occurred before the grand jury," including "the targets of the grand jury's investigations, . . . the identity of witnesses who appeared before the grand jury," and "the path of the grand jury's investigations into the two detainee deaths, including the prosecutors' strategy in investigating these deaths."  (*Id.* ¶ 11.)  Mr. Durham continues:

> The reports include extensive analyses of the substantial volume of evidence gathered during the grand jury's investigations, including quotations from and summaries of the testimony of witnesses who appeared before the grand jury, as well as discussion of documentary evidence obtained through grand jury subpoenas. The reports include details regarding the inner workings of the grand jury, including the contents of discussions with grand jurors, the number of days the grand jurors heard testimony, the period of time that the grand jury was convened, and work conducted by grand jurors. In addition, the reports analyzed the . . . applicability of criminal statutes that could potentially form the basis of an indictment, and evaluated whether there was sufficient evidence to bring such criminal charges against suspected wrongdoers.

(*Id.*) The Declination Memoranda clearly and unambiguously contain significant "matter occurring before the grand jury," as contemplated by Rule 6(e) and understood through the case law discussed above. *See Skelos*, 2015 WL 6159326, at *10.

However, this does not warrant withholding of the Declination Memoranda in their entirety. Mr. Durham's affidavit, for example, notes that the Declination Memoranda disclose the dates the grand jury served and the number of times it sat, but the Government does not make a legal case for why Rule 6(e) covers such administrative information. (*See* Dkt. No. 49 at 17 n.18.) Moreover, Mr. Durham's affidavit fails to indicate whether the Declination Memoranda include additional information outside of matters before the grand jury, such as matters relating solely to Mr. Durham's independent investigation. For example, an analysis of the "applicability of criminal statutes that could potentially form the basis of an indictment" and an evaluation of "whether there was sufficient evidence to bring such criminal charges against suspected wrongdoers" (Durham Decl. ¶ 11), may or may not be couched in a discussion of matters occurring before the grand jury. For the reasons discussed in relation to the Recommendation Memoranda, such information is not properly withheld pursuant to Rule 6(e) if it is related to an independent investigation conducted by Mr. Durham and not concerning matters occurring before the grand jury.

Here, the DOJ identifies certain information that occurred before the grand jury that the Court agrees falls within the claimed exemption. The DOJ may withhold the identity of witnesses who testified before the grand jury; the details and analysis of the evidence presented to the grand jury, including quotations from and summaries of witness testimony; the discussion of the scope and focus of the criminal investigations that occurred before the grand jury; the targets of the grand jury proceedings; and the conclusions reached as a result of those investigations. (*See* Dkt. No. 44 at 10 (citing Durham Decl. ¶ 11).) *See Fund for Constitutional Gov't*, 656 F.2d at 869 (affirming the withholding of information "naming or identifying grand jury witnesses; quoting or summarizing grand jury testimony; evaluating testimony; discussing the scope, focus and direction of the grand jury investigations; and identifying documents considered by the grand jury and conclusions reached as a result of the grand jury investigations" under Rule 6(e)'s "broad reach"); *In re Grand Jury Subpoena*, 103 F.3d at 239 (holding that the names of witnesses and targets of grand jury investigations are protected under Rule 6(e)).

The Court, therefore, grants summary judgment to DOJ in part as to the withholding of the Declination Memoranda under Rule 6(e), applied through FOIA Exemption 3.

### C.      Exemptions 1 and 3 – National Security

The Court next turns to whether DOJ properly withheld disclosure of portions of the five memoranda pursuant to either Exemption 1, which allows the withholding of properly classified information, or Exemption 3, as it incorporates the secrecy provisions of the CIA Act, 50 U.S.C. § 3507, and the National Security Act, 50 U.S.C. § 3024(i)(1).

The CIA, through the affidavit testimony of Jan Payne, Information Review Officer for the Director's Area, has invoked FOIA Exemptions 1 and 3 to protect six categories of information contained in the memoranda in this case: (1) information regarding human intelligence sources; (2) details concerning foreign liaison services; (3) the identities of covert

personnel; (4) the locations of covert CIA installations and former detention centers located

abroad; (5) descriptions of specific intelligence methods and tradecraft that are still in

operational use; and (6) classification and dissemination control markings.  (*See* Dkt. No. 44 at

12 (citing Dkt. No. 41 ("Payne Decl.") ¶¶ 8, 15-20).)  The Times does not challenge the

withholding of information under categories (1),[2] (3), or (6).  (*See* Dkt. No. 49 at 18.)  As such,

the Court grants summary judgment to the Government as to the withholding of information

under those three categories and focuses its analysis on the treatment of the three disputed

categories under Exemptions 1 and 3.

The Court first turns to Exemption 1, which applies to records that are "(A) specifically

authorized under criteria established by an Executive order to be kept secret in the interest of

national defense or foreign policy and (B) are in fact properly classified pursuant to such

Executive order."  5 U.S.C. § 552(b)(1).

The Government's burden under Exemption 1 "is a light one."  *N.Y. Times Co. v. U.S.

Dep't of Justice*, 872 F. Supp. 2d 309, 315 (S.D.N.Y. 2012) (quoting *Am. Civil Liberties Union v.

U.S. Dep't of Def.*, 628 F.3d 612, 624 (D.C. Cir. 2011) (internal quotation mark omitted)); *see

Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ("[L]ittle proof or explanation is required

beyond a plausible assertion that information is properly classified").  Indeed, the Times

concedes that "the courts are to accord 'substantial deference' to agency affidavits pertaining to

national security."  (Dkt. No. 49 at 20 (quoting *Associated Press v. U.S. Dep't of Def.*, 498 F.

Supp. 2d 707, 710 (S.D.N.Y. 2007)).)  *See also Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 76 (2d

Cir. 2009) ("[I]t is bad law and bad policy to 'second-guess the predictive judgments made by

---

[2]        While the Government describes "information" regarding human intelligence
sources, the Times consents only to withholding of "the identities of confidential human
intelligence sources."  (Dkt. No. 49 at 18 n.19.)

the government's intelligence agencies'" regarding whether disclosure of information "would pose a threat to national security" (quoting *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009))).

But "deference is not equivalent to acquiescence." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998). In reviewing an Exemption 1 withholding claim, a court does not "relinquish[] [its] independent responsibility" to engage in *de novo* review of the agency's determinations. *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 77 (D.C. Cir. 1987). Accordingly, under Exemption 1, DOJ is "is entitled to summary judgment when the affidavits describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Associated Press v. U.S. Dep't of Def.*, 462 F. Supp. 2d 573, 576 (S.D.N.Y. 2006) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

The current standard for classification of sensitive information by the Government is set forth in Executive Order Number 13,526, 75 Fed. Reg. 707 (Jan. 5, 2010).[3] "[T]he determinative consideration under Exemption 1" is whether the sensitive or classified information sought to be

---

[3] Section 1.1 of the Executive Order lists four required criteria for the classification of national security information: (1) an "original classification authority" must classify the information; (2) the information must be "owned by, produced by or for, or [be] under the control of the United States Government"; (3) the information must fall within one or more of the eight protected categories of information listed in section 1.4 of the Executive Order; and (4) the original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage." Exec. Order No. 13,526 § 1.1(a)(1)-(4). However, "[i]f there is significant doubt about the need to classify information, it shall not be classified." *Id.* § 1.1(b). The Executive Order also prohibits classification of information when the underlying purpose is to: "(1) conceal violations of law, inefficiency, or administrative error; (2) prevent embarrassment to a person, organization, or agency; (3) restrain competition; or (4) prevent or delay the release of information that does not require protection in the interest of national security." *Id.* § 1.7.

withheld by the government "reasonably could be expected to result in damage to the national security." *Florez v. CIA*, 829 F.3d 178, 185 n.6 (2d Cir. 2016) (quoting Exec. Order No. 13,526, 75 Fed. Reg. at 707) (internal quotation marks omitted).

The Times argues that, against this backdrop, DOJ has failed to meet its burden to demonstrate, "with reasonably specific detail," that the withheld information "logically falls" within Exemption 1. *Associated Press*, 462 F. Supp. 2d at 576. (*See* Dkt. No. 49 at 21-23.) It focuses on the lack of detail contained in the affidavits, arguing that the Government provides mere "boilerplate" language and "generalities," to which the Court should not defer. (Dkt. No. 52 at 7-9.)

The Court reviews *de novo* the agency's determination that Exemption 1 applies. *Goldberg*, 818 F.2d at 76-77. The Court discusses, in turn, each of the three categories of information withheld by DOJ and challenged by the Times: details concerning foreign liaison services; the locations of covert CIA installations and former detention centers located abroad; and descriptions of specific intelligence methods and tradecraft that are still in operational use.

First, Ms. Payne testifies that the memoranda contain, among other things, "details about foreign liaison services," the disclosure of which "would reveal intelligence sought by the Agency and the means by which it is acquired," causing "harm, and in some instances exceptionally grave damage, to the CIA's continued ability to collect this information and to the Agency's relationships with foreign partners." (Payne Decl. ¶ 8.) In particular, she affirms that the memoranda "contain foreign liaison and government information," and that disclosure of the information in the memoranda would interrupt the "flow of that information" to the CIA from foreign liaison services and foreign government officials. (*Id.* ¶ 10.) Disclosure of certain "details could damage the relations with the entities mentioned in the reports and with other

foreign partners working with the Agency, in turn, harming intelligence sharing and cooperation on other areas of importance to the national security." (*Id.*)

Given the context of the memoranda—which relate to DOJ's investigation into whether federal laws were violated in connection with the interrogation of certain detainees at overseas locations—the Payne Declaration provides reasonably specific support for DOJ's argument that certain details regarding foreign liaison and government information contained in the memoranda could, if disclosed, do harm to the Government's relationships with the entities mentioned.  In *Unrow Human Rights Impact Litig. Clinic v. U.S. Dep't of State*, 134 F. Supp. 3d 263 (D.D.C. 2015), the District of Columbia district court found a similarly worded affidavit sufficiently detailed to satisfy the Government's burden.  That affidavit declared that "'[t]he ability to obtain information from foreign governments is essential to the formulation and successful implementation of U.S. foreign policy,'" and further noted that the "'[r]elease of foreign government information provided in confidence to the U.S. Government,' . . . 'would cause . . . [f]oreign governments . . . to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, and . . . less disposed to cooperate with the United States in the achievement of foreign policy objectives[.]'" *Id.* at 274.  Here, the Court grants "substantial deference" to Ms. Payne's affidavit, as it "implicate[s] national security," *Associated Press*, 498 F. Supp. 2d at 710 (quoting *Lawyers Comm. for Human Rights v. INS*, 721 F. Supp. 552, 561 (S.D.N.Y. 1989)), and the Times does not challenge "the truthfulness or sincerity of the declarants" (Dkt. No. 52 at 9).  Assessing the record "on the whole," as this Court is required to do, DOJ's withholding of "the content of . . . communications" between the United States and foreign liaison services and foreign government officials, "as well as the mere fact of the existence" of the Government's relationships with them (Payne Decl. ¶ 10), "objectively survives the test of reasonableness, good faith, specificity, and plausibility."  *Florez*, 829 F.3d at

185 n.6 (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)); *see also* Exec. Order No. 13,526 §11.1(d), 75 Fed. Reg. at 707 ("The unauthorized disclosure of foreign government information is presumed to cause damage to the national security.").

Second, Ms. Payne affirms that the memoranda "contain details regarding the locations of covert CIA installations and former detention centers located abroad." (Payne Decl. ¶ 12.) The Times points out that the locations of at least some CIA operated sites appear to be no secret at all, and questions the extent of the redactions in light of unofficial disclosures of those locations. (*See* Dkt. No. 49 at 22-23 (citing news articles identifying countries with CIA sites).)

But the Government has never officially acknowledged the locations of the CIA's covert facilities and installations (*see* Dkt. No. 51 at 17), and the Times' reliance on the alleged disclosure of such information by others does not function as official acknowledgement by the Government for purposes of waiver under the FOIA exemptions. *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009) (discussing the "strict test" for official disclosure in the Exemption 1 context and emphasizing the "critical difference between official and unofficial disclosure" (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)); *see also N.Y. Times v. U.S. Dep't of Justice*, 756 F.3d 100, 120 n.19 (2d Cir. 2014) (recognizing that *Wilson* "remains the law of this Circuit" though noting that "a rigid application of it may not be warranted"). Accordingly, DOJ's request to withhold the locations of covert CIA installations and former detention centers located abroad is appropriate under the relevant standard.

Third, the Payne Declaration discusses the need to withhold information regarding specific intelligence methods and tradecraft that are still in operational use by the CIA. (Payne Decl. ¶¶ 13-15.) It emphasizes that disclosure of "methods and activities" used "in connection with current counterterrorism operations" would compromise national security by "provid[ing] adversaries valuable insight into CIA operations that would damage their effectiveness." (*Id.*

17

¶ 15.)  The Times argues that, while this "general proposition is unassailable," the Government simply fails to apply it to the facts of the memoranda at issue in a manner that would facilitate meaningful judicial review.[4]  (Dkt. No. 49 at 23.)  But Ms. Payne affirms that revealing CIA intelligence methods and tradecraft would enable an adversary to better understand the "breadth, capabilities, and limitations" of the agency's methods, helping the adversary undermine CIA methods.  (Payne Decl. ¶ 15).  She specifically identifies "dates and expenditures" as specific, protected intelligence information contained in the memoranda.  (*Id.* ¶ 14.)  Moreover, "the practice of intelligence gathering and Agency tradecraft" reflected in the documents "continue to be used in connection with counterterrorism operations."  (*Id.* ¶ 15.)  Considering the record "on the whole," *Florez*, 829 F.3d at 185 n.6 (quoting *Gardels*, 689 F.2d at 1105), the Government has shown with sufficient specificity and plausibility that the disclosure of details concerning intelligence gathering practices and CIA tradecraft that are still in use would undermine the usefulness of those methods, to the detriment of national security.  The Government has, therefore, carried its burden under FOIA Exemption 1.

The Court concludes that DOJ's "affidavits describe the justifications for nondisclosure with reasonably specific detail, [and] demonstrate that the information withheld logically falls within the claimed exemption."  *Wilner*, 592 F.3d at 73 (quoting *Larson*, 565 F.3d at 862).  Moreover, the Times does not argue that the affidavits are "controverted by either contrary evidence in the record [or] by evidence of agency bad faith."  *Id.* (quoting *Larson*, 565 F.3d at 862).  As such, summary judgment is appropriate for DOJ under Exemption 1 for the "discrete

---

[4]    The Times also argues that the DOJ fails to explain *why* information regarding intelligence methods and tradecraft is contained in the memoranda.  (Dkt. No 49 at 23.)  But it cites no authority that would require the DOJ to explain why such information might be present in the memoranda at issue, and the CIA declarant's assertion that the memoranda contain information concerning intelligence methods and tradecraft is entitled to deference.  *See Associated Press*, 498 F. Supp. 2d at 710.

portions of the five reports that . . . are currently and properly classified" as falling within the six categories of information the Government seeks to withhold.  (Payne Decl. ¶ 7.)

The Court alternatively concludes that DOJ has met its burden to withhold information from the categories in question under Exemption 3, incorporating the secrecy provisions of the CIA Act, 50 U.S.C. § 3507, and the National Security Act, 50 U.S.C. § 3024(i)(1).

The CIA Act provides that the Director of National Intelligence "shall be responsible for protecting intelligence sources or methods from unauthorized disclosure," and exempts the CIA from "any other law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency."  50 U.S.C. § 3507.  The National Security Act, 50 U.S.C. § 3024(i)(1), provides that "the Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure."

The National Security Act vests the intelligence community with "very broad authority to protect all sources of intelligence information from disclosure."  *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 681 F.3d 61, 73 (2d Cir. 2012) (quoting *Sims*, 471 U.S. at 168-69) (internal quotation marks omitted).  Indeed, the Supreme Court has instructed that the "'plain meaning' of 'intelligence sources and methods' in this context, 'may not be squared with any limiting definition that goes beyond the requirement that the information fall within the Agency's mandate to conduct foreign intelligence.'"  *Id.* (quoting *Sims*, 471 U.S. at 169).

Here, as relevant, the Government invokes both the National Security Act and the CIA Act to protect the details of foreign liaison relationships (Payne Decl. ¶¶ 19, 20), and the National Security Act to protect the locations of covert CIA facilities abroad and CIA intelligence methods and tradecraft (*id.* ¶ 19).  As with the Exemption 1 withholdings, the Times

argues that the affidavits simply do not provide sufficiently detailed analysis to carry the Government's burden.  (*See* Dkt. No. 49 at 23-24.)

As explained earlier, to meet its burden under Exemption 3, DOJ must demonstrate that the claimed statute is an exemption statute under FOIA and that the withheld material falls within its scope.  *See Sims*, 471 U.S. at 167.  It is well settled that each of the statutes at issue qualifies as an Exemption 3 statute.  *See ACLU*, 681 F.3d at 72-73; *Wilner*, 592 F.3d at 72.  And the statutes clearly cover the categories of information that DOJ seeks to withhold.  *See Schoenman v. FBI*, 841 F. Supp. 2d 69, 83-84 (D.D.C. 2012) (approving government withholding—pursuant to the National Security Act, CIA Act, and FOIA Exemption 3—of information about "classified intelligence sources and methods, including information pertaining to human and foreign intelligence service sources, covert installations, . . . and technical intelligence collection")*; Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 503 (S.D.N.Y. 2010) (approving the withholding of information about CIA human intelligence sources, foreign government liaisons, covert field installations abroad, and clandestine intelligence collection operations).  Exemption 3, incorporating the National Security Act and CIA Act, provides the Government with discretion to withhold records where, as here, the information sought to be redacted and withheld falls within the broad scope of the claimed statue.  *See ACLU v. U.S. Dep't of Def.,* 664 F. Supp. 2d 72, 78 (D.D.C. 2009) ("It is within [Government's] broad discretion to determine 'whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process.'" (quoting *Sims*, 471 U.S. at 180)).

Accordingly, the Court determines that FOIA Exemption 3 provides an alternative basis for granting summary judgment to the Government to withhold the discrete portions of the memoranda that contain the six identified categories of national security information.

### D.      Exemptions 6 & 7(C) – Privacy

In addition to the national security information withheld under Exemptions 1 and 3, DOJ invokes Exemption 6 and 7(C) to withhold "personally identifying information of third parties including witnesses, the targets of the investigations, covert and overt CIA personnel, foreign officials, and human sources" from each of the five memoranda.  (Dkt. No. 44 at 23.)

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In evaluating the application of Exemption 6, the Court must "balance the public need for the information against the individual's privacy interest."  *Associated Press v. U.S. Dep't of Defense*, 554 F.3d 274, 291 (2d Cir. 2009).

Exemption 7(C) overlaps with Exemption 6, protecting from disclosure "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C § 552(7)(C).  In applying Exemption 7(C), courts conduct a balancing test similar to that employed in Exemption 6 analyses, balancing whether "the invasion of personal privacy resulting from release of the information would outweigh the public interest in disclosure."  *Halpern v. FBI*, 181 F.3d 279, 296 (2d Cir. 1999).

Exemption 7(C), however, is broader than Exemption 6.  "The adverb 'clearly,' found in Exemption 6, is not used in Exemption 7(C)."  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 165-66 (2004).  Moreover, "whereas Exemption 6 refers to disclosures that would constitute an invasion of privacy, Exemption 7(C) encompasses any disclosure that 'could reasonably be expected to constitute' such an invasion."  *Id.* (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989)).  The parties agree that the

Court should apply Exemption 7(C) in its privacy analysis, because it is broader and requires a lesser showing.  (*See* Dkt. No. 44 at 23; Dkt. No. 49 at 27.)

Here, "third parties including witnesses, the targets of the investigations, covert and overt CIA personnel, foreign officials, and human sources," whose personally identifying information is being withheld, have a strong privacy interest in not being identified with the Government's criminal investigation.  (Dkt. No. 44 at 23-24.)  On the other hand, "[t]he *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to."  *Bibles v. Or. Natural Desert Assoc.*, 519 U.S. 355, 355-56 (1997) (second alteration in original) (quotation marks and citations omitted).

The Times argues, however, that the government provides insufficient detail for this Court to conduct the relevant balancing inquiry for each individual whose personal information may be implicated in the memoranda.  (Dkt. No. 49 at 27-29.)  Mr. Durham, for example, notes only that the release of identifying information could "carr[y] a strong negative connotation and a stigma," and that it "could subject them to harassment or embarrassment, as well as undue public attention."  (Durham Decl. ¶ 15.)  The Times argues that the Government must be more specific, "describing the role that various categories of people actually play in the memoranda and establishing more concretely that there has been no waiver of a person's privacy interest." (Dkt. No. 49 at 29.)

But, as the Government notes, the law does not impose such a requirement where, as here, the disclosure of the identifying information of these individuals would not shed any additional light on Government conduct, a fact not disputed by the Times.  (*See* Dkt. No. 44 at 24; Dkt. No. 51 at 23-25.)  D.C. Circuit case law, for example, "permits an agency to withhold 'the names and addresses of private individuals appearing in files within the ambit of Exemption

7(C) [unless disclosure] is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity." *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (alteration in original) (quoting *SafeCard Servs.*, 926 F.2d at 1206). This is described as a "categorical rule." *Id.* Here, the Times does not allege that the identities of any of the individuals identified by the Government is necessary in order to confirm or refute compelling evidence that the agency engaged in illegal activity in drafting the memoranda. *See Fitzgibbon v. CIA*, 911 F.2d 755, (D.C. Cir. 1990) ("We have said quite recently that '[e]xemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity.'" (alteration in original) (internal quotation marks omitted) (quoting *Dunkelberger v. Department of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990))).

Balancing these interests, the Court grants summary judgment to DOJ to withhold identifying information of targets, witnesses, foreign officials, overt and covert CIA personnel, and human sources pursuant to Exemptions 6 and 7(C). This grant is to be narrowly limited to the personally identifying information contained in the memoranda as the agency is not permitted "to exempt from disclosure *all* of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address." *Nation Magazine*, 71 F.3d at 896.

### E.      Exemption 5 – Scope of the Discovery Privileges

Finally, the parties revisit the applicability of Exemption 5 to the Recommendation Memoranda. Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 encompasses traditional common law privileges against

disclosure, including the attorney-client and deliberative process privileges.  *See Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 (2d Cir. 2005).

In its September Order, the Court recognized that the Attorney General publicly acknowledged and expressly relied on the five memoranda when he determined there was insufficient evidence to bring a criminal case, waiving the Government's right to invoke Exemption 5 to withhold the memoranda under the express adoption doctrine.  (Dkt. No. 33 at 18-22.)  The Court did not determine, however, the extent of the waiver at issue, noting that those sections that "do not support—or even explicitly concern—Durham's reasoning regarding the sufficiency of the evidence or the applicable federal law" may be properly withheld pursuant to Exemption 5.  (*Id.* at 21.)  The Court noted, hypothetically, that the memoranda may contain a multitude of reasons not to pursue criminal charges in this case, one (or more) of which was not expressly adopted by the Attorney General.  (*See id.*)  In that case, the express adoption doctrine would not apply and the Government's withholding of such information would be justified under Exemption 5.  (*Id.*)

Now, the Government notes that it has "reviewed the documents, and determined that the Procedural Background sections [and eleven exhibits to] the Recommendation Memoranda do not reflect Durham's reasoning."  (Dkt. No. 44 at 25 (citing Butler Decl. ¶ 11-13).)  It argues that "[t]he Attorney General did not rely on investigations and analysis that pre-dated Durham's appointment, which is what the Procedural recitations and exhibits to the Recommendation Memoranda reflect."  (Dkt. No. 51 at 22.)  To the extent that those sections and exhibits were not adopted by the Attorney General, it argues, they are properly withheld under Exemption 5.  (Dkt. No. 44 at 25.)

With respect to the exhibits, the Government's analysis contorts the logic behind the Court's September Order, however.  The September Order applied the express adoption doctrine

to the work-product doctrine.  (Dkt. No. 33 at 13.)  And "[w]hile it may well be that work product is more deeply concerned with the revelation of an attorney's opinions and strategies," the Second Circuit expressly found "no reason why work product cannot encompass facts as well."  *In re Grand Jury Subpoena*, 282 F.3d 156, 161 (2d Cir. 2002).  The Butler Declaration notes that the exhibits "do not themselves set forth the analysis and reasoning leading to Mr. Durham's and his team['s]s conclusions," but that they were "collected and considered by Mr. Durham and his team in the course of their investigation."  (Butler Decl. ¶ 13.)  Those "facts" upon which Mr. Durham and his team relied in their reasoning or conclusions, which were later expressly adopted by the Attorney General, are subject to the express adoption doctrine as applied to the work-product doctrine.  This is in keeping with the rationale underpinning the express adoption doctrine.  Where an agency "referenc[es] a protected document as authoritative, it cannot then shield the authority upon which it relies from disclosure."  *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 205 (2d Cir. 2012).  Accordingly, the express adoption doctrine applies to the referenced exhibits, such that they do not fall under FOIA Exemption 5.

With respect to the Procedural Background sections of Recommendation Memoranda, the Butler Declaration provides that they give "an in-depth recitation of inter-agency Executive Branch actions and deliberations that culminated in Mr. Durham's appointment to serve as Acting United States Attorney for the Eastern District of Virginia to investigate whether criminal laws were violated."  (*Id.* ¶ 12.)  This section of the memoranda was not adopted by the Attorney General and is properly withheld under Exemption 5.  Therefore, unless the circumstances surrounding Mr. Durham's appointment are relevant to the reasoning and conclusion of the Recommendation Memoranda, which this Court struggles to imagine is the case, this section is not subject to the express adoption doctrine and is properly withheld under Exemption Five.  *See*

*Wood v. FBI*, 432 F.3d 78, 84 (2d Cir. 2005) (finding "fatal" to an express adoption doctrine argument the fact that "[t]here [was] no evidence in the record from which it could be inferred that DOJ adopted the reasoning" at issue).

**III.    Conclusion**

For the foregoing reasons, DOJ's motion for partial summary judgment is granted in part and denied in part; and the Times's cross-motion for partial summary judgment is granted in part and denied in part.

The Government is hereby ordered to make public the challenged documents, with appropriate redactions, within 20 days of this order, pursuant to 5 U.S.C. § 552.

The parties are directed to submit five-page letter motions on whether the Court should assess reasonable attorney fees and costs against the United States within 30 days of this order, pursuant to 5 U.S.C. § 552(a)(4)(E).

The Clerk of Court is directed to close the motions at Docket Numbers 40 and 48.

SO ORDERED.

Dated: February 21, 2017
       New York, New York

_____
           J. PAUL OETKEN
      United States District Judge