IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY,
et al.,

    Plaintiffs,

v.

DEPARTMENT OF JUSTICE

    Defendant.

Case No. 14-cv-3777 (JPO)

DECLARATION OF VANNA BLAINE
INFORMATION REVIEW OFFICER
CENTRAL INTELLIGENCE AGENCY

I, VANNA BLAINE, hereby declare and state:

I. INTRODUCTION

1. I currently serve as the Information Review Officer ("IRO") for the Litigation Information Review Office ("LIRO") at the Central Intelligence Agency ("CIA" or "Agency"). I have held this position since February 2020. I have held other administrative and professional positions within the CIA since 2007, and have worked in the information review and release field since 2014.

2. I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010), reprinted in 50

U.S.C. § 3161 note ("E.O. 13526"). In this role, I am authorized to assess the current, proper classification of CIA information, up to and including TOP SECRET information, based on the classification criteria of Executive Order 13526 and applicable regulations.

3. Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

4. Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request. I make the following statements based upon my personal knowledge and information made available to me in my official capacity. This declaration supports the government's renewed motion for summary judgment by providing details regarding certain classified and statutorily protected CIA information contained in the redacted report from May 26, 2011, titled "Preliminary Review re Allegations of Abuse of Detainees by the Central Intelligence Agency - Final Report" ("Preliminary Review Memorandum").

II. **RECORDS AT ISSUE**

5. As described in the Declaration of Jan M. Payne ("Payne Declaration") (ECF No. 41) and the Court's Order dated

February 21, 2017 (ECF No. 55), the Preliminary Review Memorandum at issue was authored by federal prosecutor John Durham.[1] In short, Mr. Durham was tasked with conducting a review of the CIA's former detention and interrogation program, focusing on the treatment and interrogation of specific detainees. The Preliminary Review Memorandum details why criminal investigations should not be opened in connection with the incidents under review.

6. On two occasions (on June 30, 2011, and August 30, 2012), then-Attorney General Eric Holder issued public statements concerning Mr. Durham's investigation and findings, including a finding that a number of detainees were never in CIA custody. I understand that the U.S. Court of Appeals for the Second Circuit determined that Attorney General Holder's statements constituted a public disclosure, thereby waiving any attorney work product privilege that previously protected portions of Mr. Durham's reports relating to this finding (i.e., detainees who were never in CIA custody). New York Times Co. v. U.S. Dep't of Justice, 939 F.3d 479, 496 (2d Cir. 2019).

7. It is my understanding that the Second Circuit's ruling prompted the government's release of the redacted Preliminary Review Memorandum, which is now at issue.

---

[1] I understand that there were four other reports authored by Mr. Durham. Those reports are beyond the scope of this declaration. I have not performed a classification review of the information contained in those four reports.

Furthermore, I understand that portions of the Preliminary Review Memorandum on pages 3, 7, and 26 were released because it was determined that these portions (a) relate to the publicly acknowledged finding that certain detainees were never in CIA custody and (b) are not otherwise subject to a separate FOIA exemption.

8. Nonetheless, I found that pages 7-9 and 26-29 of the Preliminary Review Memorandum contain properly classified and statutorily protected CIA information.[2] This information is exempt from disclosure pursuant to FOIA Exemptions 1 and 3.[3]

## III. FOIA EXEMPTIONS PROTECTING CLASSIFIED INFORMATION

### A. Exemption 1

9. Exemption 1 provides that the FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, the information

---

[2] My review did not extend to any other portions of the Preliminary Review Memorandum, which continue to be withheld due to privilege (Exemption 5).
[3] In March 2009, the Senate Select Committee on Intelligence ("SSCI") officially commenced a study of the CIA's former detention and interrogation program. In conjunction with that study, the CIA declassified certain information related to the program. In December 2014, SSCI publicly released a redacted version of the Executive Summary of that study, which contained the newly declassified material. I have carefully considered the Preliminary Review Memorandum in light of those declassifications, and I have confirmed that, notwithstanding those disclosures, the above-referenced pages of the report contain details about specific, undisclosed intelligence sources, methods, and activities of the CIA that remain classified.

4

withheld pursuant to Exemption 1 satisfies the procedural and substantive requirements of Executive Order 13526, which governs classification. *See* E.O. 13526, §§ 1.1(a), 1.4(c).

10. As an original classification authority, I have determined that discrete portions of the Preliminary Review Memorandum on pages 7-9 and 26-29 are currently and properly classified, and appropriately withheld from disclosure — notwithstanding any waiver of privilege that may extend to these sections. Additionally, the information is owned by, and under the control of, the U.S. Government. As described below, the information falls under classification category § 1.4(c) of the Executive Order because it concerns "intelligence activities (including covert action), [or] intelligence sources or methods"; or under § 1.4(d) because it concerns "foreign relations or foreign activities of the United States." Unauthorized disclosure of this information could reasonably be expected to result in damage to national security. None of the information at issue has been classified in order to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization, or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security. Further, the classified information in the

Preliminary Review Memorandum is properly marked in accordance with § 1.6 of the Executive Order.

11. More specifically, the classified information on pages 7-9 and 26-29 identifies detainees who were the focus of Mr. Durham's investigation, including names and various pieces of intelligence associated with these individuals. The Preliminary Review Memorandum groups these individuals into categories based upon intelligence made available to Mr. Durham, which was derived at least in part from CIA files. Only by virtue of Mr. Durham's access to classified CIA intelligence was he able to assign these individuals into their respective categories and draw the conclusions that were ultimately reported in the Preliminary Review Memorandum.

12. The previously submitted Payne Declaration identified multiple categories of classified information collectively contained within all five of Mr. Durham's reports, including the Preliminary Review Memorandum, and outlined the harm to national security that would result from disclosure of this information. After performing my review, I can confirm pages 7-9 and 26-29 of the Preliminary Review Memorandum contain classified information of the types discussed in the Payne Declaration, specifically: (1) information about or from human intelligence sources; (2) details about foreign liaison services; (3) identities of covert personnel; (4) names and locations of CIA field installations;

(5) descriptions of specific intelligence methods and activities that are still in operational use; and (6) classification and dissemination control markings. Furthermore, I agree with the Payne Declaration's conclusions regarding the harm to national security that would result from disclosure of this information.

13. I understand that the Plaintiffs in this case have questioned whether the names of the individuals who are the subjects of these sections of the Preliminary Review Memorandum could be released, with other information regarding the CIA's involvement with those individuals redacted. Although the names of the detainees addressed by Mr. Durham's investigation may have originated from public sources, disclosing the names found in the reviewed pages of the Preliminary Review Memorandum would reveal classified CIA information even if all other information regarding those individuals — such as intelligence information and discussion of CIA operations and activities — were redacted. In particular, disclosing the names of the individuals would tend to reveal (i) human intelligence sources who may have been associated with these detainees and (ii) specific intelligence methods and tradecraft related to the CIA's interest in and prioritization of particular targets. As explained, the Preliminary Review Memorandum categorized the detainees based upon information derived from CIA files. To identify these individuals in this context, even without additional supporting

information, would reveal that such individuals were the subjects of CIA intelligence collection, operational activities, or analysis, consequently exposing aspects of the Agency's resources, capabilities, tradecraft, human sources, and specific intelligence interests and activities to adversaries.

14. This is in contrast to the released names on page 3 of the Preliminary Review Memorandum, for whom the report found no evidence of CIA involvement. With this factual distinction releasing the names on page 3 alone does not risk expressly or implicitly revealing classified intelligence sources and methods. However, considering the information on pages 7-9 and 26-29 together with the already-released names on page 3 tends to offer greater insight into the Agency's intelligence priorities by highlighting which individuals were considered of sufficient intelligence interest to warrant analysis or assessment. Terrorist organizations, foreign intelligence services, and other hostile groups continuously gather information concerning the Agency's intelligence capabilities and priorities, and exploit such information to undermine the Agency's mission. In order to continue the effective collection of foreign intelligence, the CIA must avoid disclosing the subjects of such collection.

15. Therefore, for the reasons stated above and previously articulated in the Payne Declaration, I have determined that the

reviewed portions of the Preliminary Review Memorandum contain information that remains currently and properly classified pursuant to the criteria of Executive Order 13526, as the disclosure of this information could reasonably be expected to cause damage to the national security of the United States.

B. **Exemption 3**

16. Exemption 3 protects information that is specifically exempted from disclosure by statute. To justify withholding under Exemption 3, a statute must either (i) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establish particular criteria for withholding or refer to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

17. As explained in the Payne Declaration, Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024 (the "National Security Act"), and Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (the "CIA Act"), are recognized as withholding statutes under Exemption 3. Having reviewed the portions of the Preliminary Review Memorandum on pages 7-9 and pages 26-29, I find that the withheld information is properly exempt from disclosure under both the National Security Act and the CIA Act. As discussed above, all of the information withheld pursuant to Exemption 1 constitutes intelligence

sources and methods (as well as the operational exercise of those methods) of the Agency, exempt from disclosure under the National Security Act. Moreover, the CIA Act applies to identifying information of Agency personnel, including covert personnel, as well as foreign liaison and human sources of intelligence.

\* \* \*

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of September 2020.

_____
Vanna Blaine
Information Review Officer
Litigation Information Review Office
Central Intelligence Agency