UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>THE NEW YORK TIMES COMPANY<br>and CHARLIE SAVAGE,<br><br>                Plaintiffs,<br><br>         -v-<br><br>THE UNITED STATES DEPARTMENT<br>OF JUSTICE,<br>                Defendant.</td><td>14-CV-3777 (JPO)<br><br>OPINION AND ORDER</td></tr>
</table>

J. PAUL OETKEN, District Judge:

Plaintiffs Charlie Savage and the New York Times Company (collectively "the Times")
filed this action against Defendant the United States Department of Justice ("DOJ" or "the
Government") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). After the
Government appealed the most recent judgment of this Court (Dkt. No. 55 ("February Order")),
the action has returned to the Court on remand from the Second Circuit. The parties now cross-
move for summary judgment on two questions: (1) whether the Government has complied with
the terms of the Second Circuit's mandate and (2) whether, in a memorandum released to the
Times in January 2020, the Government properly withheld a set of names under FOIA
Exemptions 1 and 3. For the reasons that follow, the Government's cross-motion is granted and
the Times's cross-motion is denied.

I.      **Background**

The Court presumes familiarity with the underlying facts and procedural history of this
case, as set forth in previous opinions. (*See* Dkt. No. 33; Dkt. No. 55.)

This case concerns FOIA requests relating to a DOJ investigation into whether federal
laws were violated in connection with certain overseas interrogations by the Central Intelligence

Agency ("CIA").  (*See* Dkt. No. 55 at 1-2.)  The investigation began in January 2008, when

Michael Mukasey, then the Attorney General, appointed John Durham, then an Assistant United

States Attorney in Connecticut, to look into the CIA's destruction of video tapes of detainee

interrogations abroad; in April 2009, then-Attorney General Eric Holder expanded Durham's

mandate to cover the interrogations themselves.  (*See* Dkt. No. 33 at 1-2.)

On April 11, 2013, Charlie Savage submitted a FOIA request to DOJ seeking "any

reports to the attorney general or deputy attorney general describing or presenting findings" from

the Durham investigations.  (Dkt. No. 33 at 5.)  DOJ identified a number of responsive

documents, and as of the Court's most recent opinion — the February Order, issued February 21,

2017 — there were five memoranda still in dispute: the Preliminary Review Memorandum, in

which Durham "investigated the legality of interrogation techniques used by CIA interrogators in

101 detainee cases" and concluded that criminal investigations should be pursued in only two of

those cases; two Recommendation Memoranda, in which Durham recommended a strategy for

investigating the two cases; and two Declination Memoranda, in which Durham ultimately

concluded that the criminal investigations should be closed without further action.  (Dkt. No. 55

at 2–3.)

In its February Order, the Court considered the parties' cross-motions for partial

summary judgment on whether the five memoranda were exempt from disclosure under various

FOIA exemptions.  It held that the Declination Memoranda were properly withheld in full under

Exemption 3, on the basis that their disclosure would reveal matters occurring before a grand

jury.  (Dkt. No. 55 at 5.)  Turning to the other three memoranda, the Court held that they could

not be withheld under Exemption 5, which encompasses traditional common-law privileges

against disclosure, because Holder had "expressly adopted" them through his public statements.

(Dkt. No. 55 at 25.)  Nevertheless, the Court held that the Government could withhold discrete portions of the memoranda containing six identified categories of national security information under Exemptions 1 and 3, and that the Government could withhold "identifying information of targets, witnesses, foreign officials, overt and covert CIA personnel, and human sources" under Exemptions 6 and 7(C).  (Dkt. No. 55 at 18-20, 23.)  On June 26, 2017, the Government appealed, arguing that the Court had erred with respect to its analysis of Exemption 5.  (Dkt. Nos. 60, 61.)

On appeal, the Second Circuit held that the "express adoption" exception to Exemption 5 did not apply in this case.  In general, the Second Circuit explained, the "express adoption" exception prevents an agency from invoking Exemption 5 where it has expressly adopted a document's reasoning as its official position — that is, where a document that "purports to offer recommendations or advice" comes, in practice, to embody the agency's "working law" on an issue that binds the public.  *New York Times Co. v. United States Dep't of Justice*, 939 F.3d 479, 490 (2d Cir. 2019).  Durham's recommendations were "expressly adopted by Holder in his final decision."  *Id.* at 492.  But since the recommendations were prosecutorial determinations that were "inherently discretionary and non-precedential," they did not bind the public, and therefore could not constitute the "working law" of DOJ for the purposes of the "express adoption" exception.  *Id.* at 492-93.

Nevertheless, the Second Circuit held that some of Holder's statements "were specific enough to have effectuated disclosure of parts of the memoranda and accompanying exhibits, thereby waiving the work product privilege with respect to those parts."  *Id.* at 496.  Specifically, the Second Circuit held that Holder's statements referencing Durham's conclusion that a number of the detainees were never in CIA custody were "tantamount to public disclosure of the parts of

the relevant memoranda that relate to this finding." *Id.*  The Second Circuit therefore affirmed in part and reversed in part, and the court directed DOJ "to release the portions of John Durham's memoranda and associated exhibits that relate to the conclusion that some of the detainees were not in CIA custody." *Id.* at 498.

On January 20, 2020, the Government released to the Times a redacted copy of the Preliminary Review Memorandum, "the only document implicated by the Second Circuit's finding of waiver." (Dkt. No. 81 at 14-15.)  The Government claims that it "released those portions of the memorandum that pertained to an explicit conclusion that individuals had not been in CIA custody, except insofar as those sections were protected by a FOIA Exemption other than Exemption 5." (Dkt. No. 81 at 15.)  On page three of the memorandum, for example, the Government released a list of names under the section heading "No Evidence of CIA [REDACTED] Involvement" and accompanied by a paragraph that reads:  "According to open-source human rights articles, the following detainees were reported as possibly being detained in a secret U.S. detention site.  Contrary to open-source reports, a thorough review of available FBI, CIA, and DOD documents produced no evidence of [REDACTED] CIA involvement with the following individuals [REDACTED]." (Dkt. No. 82–1 at 3.)  On page seven, the Government released part of a section heading — "Detainee Not in CIA Custody" — followed by a paragraph that reads:  "According to open-source human rights articles, the following detainees were reported to have been detained in secret CIA interrogation sites.  Contrary to open-source reports, a thorough review of FBI, CIA, and DOD documents failed to confirm that these detainees were held in CIA custody." (Dkt. No. 82-2.)  And on page 26, the Government released a single sentence:  "A thorough review of FBI, CIA and DOD documents failed to show

that these detainees were held in CIA custody." (Dkt. No. 82–1 at 26.) Most of the rest of the memorandum is redacted.

DOJ now moves for summary judgment, asserting that it has properly complied with the terms of the Second Circuit's mandate. (Dkt. No. 79.) The Times cross-moves for summary judgment, arguing that DOJ too narrowly interpreted the mandate and, separately, that it should have disclosed the list of names on page seven of the memorandum. (Dkt. No. 85.)

## II.    Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Since both parties move for summary judgment and neither party disputes the facts, the question is which party prevails as a matter of law with respect to the document at issue.

FOIA cases are typically resolved on summary judgment. *See Adamowicz v. IRS*, 552 F. Supp. 2d 355, 360 (S.D.N.Y. 2008) (citing *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)). To prevail, "the defending agency has the burden of showing … that any withheld documents fall within an exemption to the FOIA." *New York Times Co. v. United States Dep't of Justice*, 235 F. Supp. 3d 522, 529 (S.D.N.Y. 2017) (quoting *Carney*, 19 F.3d at 812). The agency may satisfy this burden through "[a]ffidavits or declarations … giving reasonably detailed explanations why any withheld documents fall within an exemption." *Id.* (quoting *Carney*, 19 F.3d at 812). Such affidavits or declarations are "accorded a presumption of good faith," and where the submissions are "adequate on their face," district courts may "forgo discovery and award summary judgment on the basis of affidavits." *Id.* (internal citations omitted).

But since "disclosure, not secrecy, is the dominant objective of the Act," FOIA exemptions are afforded a "narrow compass." *Id.* (internal citations omitted). After all, the law

5

"was enacted to facilitate public access to Government documents," "to pierce the veil of administrative secrecy," and "to assure the existence of an informed citizenry to hold the governors accountable to the governed." *Id.* (internal quotation marks and citations omitted).

## III.   Discussion

The Court first considers whether the Government has complied with the Second Circuit's mandate, and then asks whether the Government properly withheld the names on page seven under FOIA Exemptions 1 and 3.

### A.   Second Circuit Mandate

In keeping with its holding that some of Holder's public statements waived the work-product protection with respect to parts of the memoranda, the Second Circuit directed DOJ to "release the portions of John Durham's memoranda and associated exhibits that relate to the conclusion that some of the detainees were not in CIA custody." *New York Times Co.*, 939 F.3d at 498.  The parties dispute whether the Government has fully complied with this mandate.  The Government avers that it "looked for textual indications in the memorandum that Durham had made a determination, conclusion, or finding that an individual had not been in CIA custody," and then "released all non-exempt portions of the memorandum that related to these conclusions."  (Dkt. No. 81 at 27.)  The Times, citing broad definitions of the phrase "relate to," argues that the Government ought to have gone further, releasing not just the passages that set forth Durham's ultimate conclusion, but also "the law and facts that Durham relied upon to reach that conclusion."  (Dkt. No. 86 at 11.)

In the Court's view, the Times sets forth the correct reading of the breadth of the Second Circuit's mandate.  Had the Second Circuit intended for DOJ to release only statements of Durham's conclusions, it could have directed the agency to "release the portions of John Durham's memoranda and associated exhibits that *conclude* that some of the detainees were not

in CIA custody."  The insertion of the phrase "relate to" indicates that the Second Circuit

intended DOJ to release not just statements of conclusion, but also the law and facts that

informed those conclusions; any other reading would deprive the phrase of its ordinary meaning.

*See, e.g.*, *Morales v. Trans World Airlines*, 504 U.S. 374, 383 (1992) (holding that the ordinary

meaning of "relating to" is "a broad one"); *Coregis Ins. Co. v. Am. Health Found.*, 241 F.3d 123,

128-29 (2d Cir. 2001) (stating that the phrase "related to" tends to be "defined more broadly and

is not necessarily tied to the concept of a causal connection"); *Collins & Aikman Prods. Co. v.

Bldg. Sys.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that an arbitration clause referencing "any

claim or controversy arising out of or relating to the agreement" was "the paradigm of a broad

clause"); *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, No. 09-CV-6148, 2012 WL 12932049,

at \*44 (S.D.N.Y. July 17, 2012) ("[T]he Second Circuit has discussed the term 'relating to' as

one that is broad in scope, and that is equivalent to such phrases as 'in connection with' and

'associated with.'").

But, as the Government clarifies in its reply brief, DOJ does not dispute this

interpretation.  (Dkt. No. 89 at 12 ("For the avoidance of doubt, the Government agrees that,

where the Preliminary Review Memorandum explicitly sets forth a conclusion that a particular

detainee was not in CIA custody, the Second Circuit's waiver decision applies to the statement

that sets forth such a conclusion, as well as to any facts, law, or reasoning set forth in the

Preliminary Review Memorandum that explains the basis for this conclusion.").)  The

Government likewise affirms that "it has released the portions of the Preliminary Review

Memorandum that relate to any such conclusion, except to the extent that such information was

protected by another FOIA exemption."  (*Id.*)  The Times calls the Government's clarification

conclusory, arguing that DOJ's declarations and previous briefing "raise substantial doubt as to

whether the Second Circuit's 'related to' requirement was implemented at all."  (Dkt. No. 92 at 6.)  But the Court is aware of no reason why the Government may not clarify its position in later briefing, as it has done here.  And, far from being conclusory, the Government uses the same language as the Times in explaining its understanding of the mandate: a directive to release not just statements of Durham's conclusions, but also the "facts, law, or reasoning … explain[ing] the basis" for those conclusions.  (Dkt. No. 89 at 12; Dkt. No. 86 at 11.)

In light of the Government's clarification, the Court is satisfied by DOJ's presumably good-faith representation that it understands and has complied with the Second Circuit's mandate.  The Court therefore declines to order a more searching review.

### B.      FOIA Exemptions 1 and 3

The Court next turns to whether the Government properly invoked Exemptions 1 and 3 to redact the names on page seven of the Preliminary Review Memorandum.

#### 1.      The Mandate Rule

As a threshold matter, the Court considers the Government's argument that the mandate rule "prevents Plaintiffs from relitigating the Government's Exemption 1 and 3 withholdings on remand."  (Dkt. No. 81 at 17.)  The mandate rule governs the duty of a district court on remand, compelling compliance "with the dictates of the superior court and foreclos[ing] relitigation of issues expressly or *impliedly* decided by the appellate court."  *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (internal quotation marks and citation omitted).  In the Government's view, because this Court's February Order "granted the Government's motion for summary judgment on its Exemption 1 and 3 withholdings," and because Plaintiffs did not pursue an appeal from that final judgment, the Second Circuit's mandate "affirmed that aspect of the judgment."  (Dkt. No. 81 at 17.)  This means, according to the Government, that the Court cannot now "reconsider the propriety of the Government's Exemption 1 and 3 withholdings."  (*Id.*)

This argument is unavailing.  In its February Order, the Court drew on the testimony of Information Review Officer Jan Payne (*see* Dkt. Nos. 41, 41-1 ("Payne Declaration")) to hold that the Government could withhold six categories of information under Exemptions 1 and 3: "(1) information regarding human intelligence sources; (2) details concerning foreign liaison services; (3) the identities of covert personnel; (4) the location of covert CIA installations and former detention centers located abroad; (5) descriptions of specific intelligence methods and tradecraft that are still in operational use; and (6) classification and dissemination control markings."  (Dkt. No. 55 at 12-13, 18-19.)  Under the mandate rule, it would be improper for the Times to relitigate whether information falling into one of those six categories could be withheld under Exemptions 1 and 3; this Court has already upheld the propriety of such withholdings, and the Times did not challenge that ruling on appeal.  But that is not what the Times is doing here. Far from relitigating the February Order, the Times relies on the Court's reasoning therein to argue that the names on page seven do not fall into any of the six listed categories, and therefore that they should not have been withheld.  (*See* Dkt. No. 92 at 9.)   The Court did not rule at that level of specificity in its February Order, so the Times could not have raised the issue on appeal.

The Government makes one other procedural argument in an effort to preclude the Times's challenge.  Because the Second Circuit issued a limited mandate "directing this Court to effectuate the disclosure of the specific information for which Exemption 5 was waived," the Government argues that the Court cannot consider arguments about Exemptions 1 and 3 on remand.  *See Puricelli v. Argentina*, 797 F.3d 213, 218 (2d Cir. 2015) ("Where a mandate limits the issues open for consideration on remand, a district court ordinarily cannot consider additional issues.").  But this argument likewise falls short.  For the Court to determine whether DOJ has disclosed "the specific information for which Exemption 5 was waived," it has to consider

whether any of that information was improperly withheld under other FOIA exemptions.  The Court may therefore proceed to address whether the names on page seven should have been disclosed.

### 2.        The Redacted Names

The Government argues that the names were properly redacted under Exemption 1, which allows the withholding of properly classified information, and Exemption 3, as it incorporates the secrecy provisions of the CIA Act, 50 U.S.C. § 3507, and the National Security Act, 50 U.S.C. § 3024(i)(1).  After reviewing the record, the Court agrees.

The Court begins with Exemption 1, which applies to records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) … properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  Under the current standards for classifying sensitive information, information is properly classified if it could "reasonably could be expected to result in damage to the national security."  *Florez v. CIA*, 829 F.3d 178, 185 n.6 (2d Cir. 2016) (quoting Exec. Order No. 13,526, 75 Fed. Reg. 707 (Jan. 5, 2010)).

As the Court explained in its February Order, the Government's burden under Exemption 1 "is a light one."  (Dkt. No. 55 at 13 (quoting *N.Y. Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 315 (S.D.N.Y. 2012).)  Courts are supposed to "accord substantial deference to agency affidavits pertaining to national security."  (*Id.* (internal quotation marks and citation omitted).)  Still, deference does not mean acquiescence.  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998).  For DOJ to prevail on summary judgment, its affidavits must "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith."  (Dkt. No. 55 at 14 (internal quotation marks and citation omitted).)

The Court reviews the Government's classification decision *de novo*.  *See Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 74 (D.C. Cir. 1987).  The CIA, through the affidavit testimony of Vanna Blaine, Information Review Officer for the Litigation Information Review Office, explains that disclosing the names on page seven would "reveal that such individuals were the subjects of CIA intelligence collection, operational activities, or analysis, consequently exposing aspects of the Agency's resources, capabilities, tradecraft, human sources, and specific intelligence interests and activities to adversaries."  (Dkt. No. 80 at 7-8.)  Such disclosure, Blaine testifies, would benefit "[t]errorist organizations, foreign intelligence services, and other hostile groups [that] continuously gather information concerning the Agency's intelligence capabilities and priorities, and exploit such information to undermine the Agency's mission."  (Dkt. No. 80 at 8.)

The Times argues that the names in question do not fall within any of the six categories of information the Court previously said the Government could withhold under Exemption 1. (Dkt. No. 86 at 16; *see also* Dkt. No. 86 at 12 ("Those six categories are the law of the case … and set the bounds of what the Government can withhold under Exemptions 1 and 3.").)  But Blaine testifies that disclosing these names "would tend to reveal (i) human intelligence sources who may have been associated with these detainees and (ii) specific intelligence methods and tradecraft related to the CIA's interest in and prioritization of particular targets."  (Dkt. No. 80 at 7.)  The Blaine affidavit therefore makes a plausible case that the names implicate at least two of the six categories: the first ("information regarding human intelligence") and the fifth ("descriptions of specific intelligence methods and tradecraft that are still in operational use").

The Times maintains that the names cannot fall within the fifth category because names are not "descriptions" of intelligence methods or tradecraft.  (Dkt. No. 86 at 16.)  But this argument rests on too narrow a reading of the Court's prior opinion.  The six categories in the February Order came from the Payne Declaration, which defined the fifth category broadly as encompassing "details that would disclose … the actual implementation of intelligence methods in an operational context."  (Payne Declaration ¶ 13.)  Revealing the names of people who are of interest to the CIA risks disclosing such details and offering to adversaries "a picture of the breadth [and] capabilities … of the CIA's intelligence collection or activities."  (Payne Declaration ¶ 15.)  *See also Wolf v. C.I.A.*, 473 F.3d 370, 376-77 (D.C. Cir. 2007) (noting that "confirming or denying an Agency interest in a foreign national reasonably could damage sources and methods by revealing CIA priorities").

The Times also decries the Government's reasoning as illogical, pointing out that DOJ was willing to release a similar set of names on page three.  (*See* Dkt. No. 92 at 10.)  But despite the superficial similarities between pages three and seven, the Government makes a compelling case that the latter implicates national security in a way the former does not.  As Blaine testifies, the individuals named on page three are those for whom Durham found no evidence of CIA involvement; as a result, "releasing the names on [that page] alone [did] not risk expressly or implicitly revealing classified intelligence sources and methods."  (Dkt. No. 80 at 8.)  The individuals named on page seven, in contrast, were found not to be in CIA custody but were nevertheless "considered of sufficient intelligence interest to warrant analysis or assessment."  (*Id*.)  The Government has therefore made a reasonably specific showing that disclosing these names would expose the CIA's "specific intelligence interests and activities."  (*Id.*)

In addition, the Government explains that, unlike the names on page three, the names on page seven appear not in a straightforward list but in "paragraphs of text that contain discussions of classified information derived from CIA files regarding specific individuals, including CIA intelligence associated with those individuals and CIA operations and activities that took place in relation to those individuals."  (Dkt. No. 89 at 5-6.)  The Court has no reason to doubt the Government's claim that transforming the withheld text on pages seven through nine into a list of names — by disclosing only the names and redacting the rest — would result in each name "appear[ing] in the midst of a sea of material that has been redacted because it contains classified CIA information."  (Dkt. No. 89 at 6.)  The Government argues — and the Court agrees — that this would be enough to suggest that the individuals "were considered of sufficient intelligence interest to warrant analysis or assessment," which would in turn reveal something important about the "CIA's intelligence priorities and tradecraft."  (*Id.*)

In light of the substantial deference the Court must accord to the Blaine affidavit, these statements suffice to establish that disclosing the names "reasonably could be expected to result in damage to the national security."  *See Florez*, 829 F.3d at 185 n.6 (quoting Exec. Order No. 13,526, 75 Fed. Reg. at 707); *see also Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 76 (2d Cir. 2009) (noting that it is "bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies" regarding whether the disclosure of information "would pose a threat to national security." (internal quotation marks and citation omitted)).  The Government has therefore met its burden to withhold the names in question under Exemption 1.

The Government has likewise met its burden with respect to Exemption 3.  That exemption allows an agency to properly withhold records that are "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  "To meet its burden under Exemption 3, DOJ must

demonstrate that the claimed statute is an exemption statute under FOIA and that the withheld material falls within its scope."  (Dkt. No. 55 at 6.)

Here, the relevant statutes are the CIA Act, 50 U.S.C. § 3507, and the National Security Act, 50 U.S.C. § 3024(i)(1) — both of which qualify as Exemption 3 statutes.  (*See* Dkt. No. 55 at 20.)  The CIA Act provides that the Director of National Intelligence "shall be responsible for protecting intelligence sources or methods from unauthorized disclosure," 50 U.S.C. § 3507, while the National Security Act provides that "the Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 3024(i)(1).  The National Security Act "vests the intelligence community with 'very broad authority to protect all sources of intelligence information from disclosure.'"  (Dkt. No. 55 at 19 (quoting *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 681 F.3d 61, 73 (2d Cir. 2012)).)

In its February Order, the Court held that the six identified categories of national security information fell within the scope of these statutes and could therefore be properly withheld under Exemption 3.  (Dkt. No. 55 at 20.)  Given that the Government has made a plausible case that disclosing the names on page seven would reveal information falling into two of these six categories, Exemption 3 offers an alternative basis for the Government to withhold the names in question.  *See Schoenman v. FBI*, 841 F. Supp. 2d 69, 83-84 (D.D.C. 2012) (approving government withholding — under the National Security Act and CIA Act, in combination with FOIA Exemption 3 — of information about "classified intelligence sources and methods, including information pertaining to human and foreign intelligence service sources, covert installations, . . . and technical intelligence collection").

## IV.   Conclusion

For the foregoing reasons, DOJ's motion for summary judgment is GRANTED, and the Times's cross-motion for summary judgment is denied.

The Clerk of Court is directed to close the motions at Docket Numbers 79 and 85, and to close this case.

SO ORDERED.

Dated: July 23, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge